June, 1810.

BUSH
v.
BRADLEY.

---

JACOB BUSH AND ELIZABETH HIS WIFE, HENRY RELAY AND ROBERT RELAY *against* ABRAHAM BRADLEY, jun.

MOTION for a new trial.

This was an action of ejectment for a lot of land in the city of *New-Haven*. The suit was commenced on the 9th of *November*, 1808.

The defendant pleaded the general issue; and on the trial, the case appeared to be as follows: *Josiah Wood-house* died seised of the premises in 1766; and on his death, the same descended to his only son *Robert*, who

Where there are several persons having a joint title to an estate, any one or more of them, without joining the others, may sue and recover against him who has no title.

In this state, the husband may be tenant by the curtesy of lands to which the wife had title, but of which she was not actually seised during coverture.

*Quære*, whether the saving of the statute of limitations against the right of entry into lands, &c. (tit. 97. c. 3.) extends to supervenient disabilities, or to such only as exist at the time the right of entry accrues?

entered thereon, and died seised thereof in 1775; and on his death the same descended to *Mary Woodhouse*, his only child, who was born in *December*, 1774, and who intermarried with *James Goldear* in 1794, before she arrived at the age of twenty-one years. She remained a *feme covert* until her death, which happened in *November*, 1807, leaving her husband, *James Goldear*, living, and having had children by him, born alive, who died before their mother, and who could have inherited the premises, if they had been alive at the time of her decease. *Goldear* had never been in actual possession of the premises; but the defendant, more than twenty years before the commencement of this action, having purchased the premises for a valuable consideration, went immediately into possession of the same, and from that time down to the time of trial, held the same adversely to all others. *Mary* had never been in possession since her intermarriage with *Goldear*. *Josiah Woodhouse* left at his death no brother, nor any issue of a brother; and he never had but one sister, *Elizabeth*, who died before the commencement of this suit, leaving the plaintiffs her only heirs at law. It also appeared that there were nine other persons living in equal degree of kindred to *Mary Goldear* with the plaintiffs. On these facts the plaintiffs claimed that they were entitled to recover. The defendant objected to a recovery, on the ground that *Goldear* being now living was tenant by the curtesy of the premises, though neither he nor his wife had ever been in actual possession during the coverture. And the court directed the jury, on that ground solely, to find a verdict for the defendant; which the jury did accordingly. The plaintiffs moved for a new trial for a misdirection; and the question was reserved for the opinion of the nine judges.

*Daggett* and *Gould*, in support of the motion.

1. It will be claimed by the defendant's counsel, that

June, 1810.

BUSH
v.
BRADLEY.

the fact of there being other heirs not joined, may be shown on the general issue; and this will be conclusive against the plaintiffs' right to recover. But we contend that such nonjoinder can be taken advantage of only by plea in abatement. The following authorities from the *English* books establish this point. *Leglise* v. *Champante*, 2 *Stra.* 820. *Brown* v. *Hedges*, 1 *Salk.* 290. *Addison* v. *Overend*, 6 *Term Rep.* 766. 1 *Wms. Saund.* 291. g. h. *in notis.* It has been decided by the superior court in this state, in the counties of *Hartford* and *Fairfield*, that any number of joint tenants, tenants in common, or co-parceners, less than the whole, may join.

2. The next objection to our recovery is, that there is an outstanding life estate in *James Goldear*, he being tenant by the curtesy. To this we answer, that the wife of *James Goldear* was not seised during the coverture, and, therefore, he is *not* tenant by the curtesy. *Mary Goldear* was disseised before the marriage. The seisin of the wife must be a *seisin in deed*, which is an actual seisin or possession of the lands; not a bare right to possess. *Co. Litt.* 29. a. 2 *Bl. Com.* 127. 1 *Cruise's Dig.* 107. But there was not even a seisin in law in *Mary Goldear*, during the coverture: another person was in possession holding adversely. It is clear, then, that by the common law of *England*, one of the essential requisites to constitute a tenancy by the curtesy was wanting. The next question is, whether the *English* common law, with regard to this subject, has been adopted in this state? As to this question, we are indifferent which way it is decided. The counsel for the defendant may take either alternative. This tenancy rests wholly upon the *English* common law. If it has not been adopted here, then there can be no tenant by the curtesy; and the objection to our recovery falls to the ground. If it has been adopted here, it must have the indispensable requisites of such an estate, one of which is seisin in the wife during coverture.

June, 1810.

Bush
v.
Bradley.

But it will be said, that though this estate certainly exists here, yet the superior court have decided, in several instances, that seisin is not necessary. At the time Judge *Swift* compiled his elementary work, it was not known to that writer, that the *English* common law had been departed from. "To constitute this estate," he says, "it is requisite that the wife be actually possessed of the lands, and not have a mere right to possess." 1 *Swift's Syst.* 252. There were two cases in *Fairfield* county, in which the rule requiring seisin was recognised. [Reeve, J. There was such a case in *Fairfield* county, but it was not very well considered.] The case of *Hillhouse* v. *Chester*, 3 *Day*, 166. only decided that the person claiming as heir is not obliged to make himself heir to the person last seised. The decision proceeded entirely upon our statute of distributions; which is very different from the *English* canons of descent. Can this court now cut off what has hitherto been an essential requisite in this estate? It is never safe to overturn an established doctrine of the common law, because the reason of it is not perceived to exist.

3. The next objection to our recovery is, that our right of entry is barred by the statute of limitations.(*a*) We reply, that we are within the savings of that statute. At the decease of *Robert Woodhouse*, *Mary* was under the disability of infancy; and before that disability was removed, she became a *feme covert*, and so remained until her death, which was within five years from the commencement of this action. There was no point of time between the accruing of her title and her death when she was capable of vindicating her right. The savings of the statute operate as long as disabilities exist in continuity; though we admit that when the time which is to constitute the bar has once begun to run, no subsequent disability will stop it. The enacting clauses of statutes

(*a*) 1 *Stat. Conn*, tit. 97, c. 3.

June, 1810.

BUSH
v.
BRADLEY.

of limitation, being in derogation of the common law, are to be construed strictly. For the same reason the savings are to be construed liberally. The statute proceeds either upon the ground of an abandonment by the true owner, or a forfeiture by neglect, or both. But there can be no abandonment or forfeiture by a person incapable of abandoning, and to whom *laches* is not imputable. But we rely upon the case of *Eaton* v. *Sanford*, 2 *Day*, 523. as having settled the point. That case was decided unanimously both in the superior court and in the court of errors; it was conformable to long usage and the general opinion of lawyers. To overturn it now will be to remove a landmark of property.

*Ingersoll* and *N. Smith*, contra.

1. It appears that there are other heirs in equal degree not joined in the action. This, we contend, is a fatal objection. These heirs have an estate in *coparcenary.* 2 *Bl. Com.* 187. And it is laid down in *Co. Litt.* 180. b. that joint tenants must jointly implead, and jointly be impleaded by others, *which property is common between them and coparceners.* There is the same reason why they should jointly plead and be impleaded; for they have the same unities of interest, title and possession. Then we apprehend the nonjoinder is fatal in any stage of the cause. The objection is founded upon the nature of the estate; and must continue, unless provided against by *summons and severance.* Whatever decisions there may have been by the superior court on the circuit, the question is *res integra* in this court, and must be decided upon principle.

2. We lay down this proposition, that the husband is tenant by the curtesy of all the estate which any issue born of the wife during the coverture would be capable of inheriting. The only reason why seisin is necessary by the *English* law, is, that the issue may be capable of inheriting; it being a rule of that law, that no one can

be heir to the ancestor of any land whereof the ancestor was not actually seised. 1 *Cruise's Dig.* 113. If, then, the issue can inherit without seisin in the ancestor, such seisin is unnecessary in order to constitute a tenancy by the curtesy. But it has been solemnly decided by this court, in the case of *Hillhouse* v. *Chester*, 3 *Day*, 166. that seisin is unnecessary in order to transmit an estate by descent.

3. The saving clause of the statute of limitations regards only such disability as existed at the time when the title first accrued. To extend the saving to a disability which did not exist until many years after that time, would be to make a new statute. The case of *Doe*, d. *Duroure*, v. *Jones*, 4 *Term Rep.* 300. which was a decision upon the statute of fines, 4 *Hen.* VII. c. 24. confirms our position. But the case of *Doe*, d. *George*, v. *Jesson*, 6 *East*, 80—84. which turned upon the construction of the second clause of exceptions in the statute of limitations, 21 *Jac.* I. c. 16. is directly in point; and the reasons given for the decision are unanswerable. *Eaton* v. *Sanford*, 2 *Day*, 523. was not fully argued, or well considered; it was decided by the old court in its last moments, when its great luminary was absent; and it ought not to preclude a further examination of the subject. The construction which we contend for is reasonable and safe; but the opposite construction plants at the root of all our titles *a worm that dieth not.*

REEVE, J. (after stating the case.) It was contended by the defendant, that the plaintiffs could not recover without joining the other persons in the same degree of kindred with themselves in the suit. This objection cannot prevail, since a practice has obtained in this state, where there are several who have a joint title, for one or any number of them to sue and recover against him who has no title. Although this is not the rule of the common law of *England*, yet, as no inconvenience is expe-

rienced from this practice long established, it would not be proper to restore the old common law. No injury is done to the wrongdoer, whether he is ejected by some, or all, who have title. No injury is done to those who are not joined; for those who sue, recover and hold the possession for them as well as for themselves. This court, therefore, do not consider the nonjoinder in the suit of some who have title, as a reason in *Connecticut* why the plaintiffs should not recover; nor is it a reason why the suit should abate, if advantage of it had been attempted in that way.

It is contended by the defendant, that when the title to the premises accrued to said *Mary*, she was a minor; and by the clause in the statute of limitations saving the rights of minors, they must sue within five years after having arrived to the age of 21 years, and not afterwards; that much more than this time had elapsed, and no suit had been brought; and her becoming a *feme covert* after the title had accrued whilst a minor does not bring her within the proviso of the act; that the true construction of the statute is, that if the title first accrues during minority, five years after that ceases is given in which a suit may be brought; that if the title accrues during coverture, five years is allowed after the discoverture. On the other hand, the plaintiffs contend that the object of the statute was to save the rights of the minor and *feme covert*, because of their inability to pursue them; and that it is as important that a minor who cannot prosecute her rights with sufficient discretion during minority, who becomes a *feme covert* during that period, and by this means is incapable of prosecuting them, should be effectually protected, as one to whom the title accrues during coverture. If the sound construction of the statute is as contended for by the defendant, it puts an end to the case; but as the case is with the defendant on another point, viz. that *Goldear* is a tenant by the curtesy, provided the construction is as

June, 1810.

BUSH
v.
BRADLEY.

contended for by the plaintiffs, I do not find it necessary to determine the question respecting the saving proviso in the statute of limitations; but shall proceed upon the hypothesis that the construction is such as the plaintiffs claim it to be.

As to the point respecting the curtesy, there is no question but what there must have been, by the *English* law, an actual seisin of the wife of the premises during the coverture, to entitle the husband to the curtesy.

It is said that unnecessary departures from the common law of *England* are not to be favoured; that by such means every thing is rendered uncertain. I am fully of opinion, that few maxims of our law are more important than that of *stare decisis*; but it must be acknowledged by all, that our system of law respecting real property is, in many instances, very different from the *English* system. We have in some instances, when we have adopted the principles of the *English* law, extended them to cases which, by the adjudications of the *English* courts, have not been supposed to fall within the governing principle; in others, we have adopted entirely different principles; and in all such cases where this has been done, which are *pari ratione* with those already settled, if we reject our own and adopt theirs, we shall mar the symmetry of our law; and the preservation of symmetry in our system, I also view as a most important consideration. In *England*, it is not sufficient that a man is proprietor of real property, and has a perfect right to it when he dies, to cause it to descend to his heir at law. No: he must be actually seised thereof. The maxim is *seisina facit stipitem*; and the person that is heir to that property, will be heir to him that was last seised. If *A.* should die, who owns *Whiteacre*, which descended to him from his father, but has not been actually seised, leaving a brother of the half blood, *B.*, and a sister, *C.*, of the whole blood, this estate cannot descend to *C.*, his sister and heir; for *B.*, being of the

VOL. IV.                    Q q

BUSH
v.
BRADLEY.

half blood, cannot, by their law, inherit to his brother; but yet the same will descend to *B.*, who is heir to his father, who was the last seised. Had *A.* been seised, the estate would have descended to *C.* The maxim of *seisina facit stipitem* is an unyielding maxim of their law, and what governs the descent of property. But this is not our law. It is settled that it shall descend to the heirs of him who owns the property, whether he was seised or not.(*a*) Seisin directs the descent with them; ownership with us.

By the *English* law a devise will not operate upon real property, of which the devisor is disseised. Seisin is an indispensable requisite to give effect to the devise. A devise, by our law, is good, although a man is disseised. Seisin is necessary in their law, and nothing but owner-ship in our law. We have always considered ownership of real property sufficient to maintain an action of tres-pass against every intruder; but by the *English* law, ac-tual possession by entry is necessary. We have always considered ownership as giving a right to possession of real property, as much so as ownership of personal pro-perty. Ownership in the one case draws after it the pos-session as much as in the other case; and whenever a right of possession is lost, all title and ownership are lost. So the statute of limitations respecting lands has always been construed. The statute, in the words of it, does not take from the original proprietor his title; it only tolls his right of entry; and yet this statute has been al-ways considered as barring all claim of title, whilst the same words in the *English* statute have been considered not as having any effect on the title, but only on the right of entry, and the lands may be recovered by a form of proceeding proper for such a case. The *English* law distinguishes betwixt a right of possession and a right of property; but our law does not. Wherever there is

(*a*) *Vide Hillhouse* v. *Chester*, 3 *Day*, 166.

a right to real property, there is, of course, a right of possession, and the statute, which takes away the right of possession, takes away the right of property; and this is the reason that this statute has received a construction altogether different from the construction given to the *English* statute; and this is perfectly analogous to every other case of real property in this state. Wherever you find a right of property, you find a right of possession, and all the consequences of ownership attending it that you find in *England*, where there is an actual seisin; and, on the other hand, where there is no right of possession, there is no ownership. So in this case, *Mary Goldear* had title to the land, and though not actually seised, her husband acquired the same rights on her death as if she had been seised. Since seisin is not necessary in case of descent to the heirs, neither is it necessary to pass lands by a devise, why should it be thought necessary to the husband's title by the curtesy?

The decision of the court, in this case, is no departure from fixed rules and precedents. The departure from the *English* rule respecting the efficacy of seisin has long since been departed from: and to adhere to it in this case would mar the symmetry of our law.

MITCHELL, Ch. J., SWIFT, TRUMBULL, BALDWIN and J. C. SMITH, Js. were of the same opinion.

N. SMITH, J. I concur fully in the opinion already expressed, that *James Goldear* had a right to the property in question as tenant by the curtesy.

I am also of opinion that the plaintiffs are barred by an adverse possession under the statute for quieting estates. And here the question is, whether *Mary Woodhouse*, who was a minor when her right of entry first accrued, has only till she is of age and five years after, to pursue her claim; or whether her marrying during minority is to extend the operations of the proviso to the

whole extent of coverture, and five years after its expiration.

Had the proviso in the statute been omitted, all natural persons, as well minors and *feme coverts* as others, would have been barred. The proviso cannot, therefore, be extended beyond its obvious import.

The first inquiry which occurs is, who are the persons within the proviso; and the statute gives the answer. They are those who, at the time such right of entry *first* accrues, are within the age of twenty-one years, *feme coverts, non compos mentis,* imprisoned, or beyond the seas.

The next inquiry is, what is the extent of the saving in favour of the persons? and to this the answer is equally explicit. They must take *benefit* of it within five years next after their full age, discoverture, or coming of sound mind, enlargement out of prison, or coming into this country; and at no time after the said five years.

I cannot doubt for a moment as to the meaning of the legislature, in using these correspondent terms in the different parts of this proviso. They meant, unquestionably, that a person who was a minor when his or her right of entry first accrued, should have until five years after coming of full age to pursue his or her claim; that a person who was a *feme covert* at the time her right of entry first accrued, should have five years after discoverture; that the man imprisoned should have five years after enlargement out of prison; the *non compos mentis* five years after coming of sound mind; and the person beyond seas, five years after returning to this country.

And I cannot believe that it would occur to the mind of any person, from merely reading the statute, that the legislature could mean to say, that a person who was a *minor*, when her right of entry first accrued, should have until five years after *discoverture* to pursue her claim;

June, 1810.

Bush
v.
Bradley.

or that one *beyond seas* should have five years after *returning to this country*; or one *non compos mentis*, five years after becoming of sound mind. In short, I consider the statute as providing for each disability distinctly from the others, and no disability is provided for at all, except such as exist at the time the right of entry *first accrues*; though if several disabilities should exist at that time, doubtless the proviso would extend to all; or the one which continued the longest of them.

Were any great evils to be apprehended from adopting what appears to me the plain literal meaning of the statute, it might excite a doubt as to the correctness of my opinion.

But on the most liberal construction of the proviso, a quiet possession of nearly twenty-five years may be interrupted by the dormant claim of a minor. And the claim of a *feme covert* may exist still longer. And by being an idiot, or beyond seas, the claim may exist through a whole life. And upon an opposite construction, disability may be added to disability to an indefinite extent.

Should any persons still be under disabilities, when the statute is about to attach, their rights may be taken care of by those whose duty it is to see to their interest. I consider this statute to be one highly beneficial to the community; and should be sorry to see its operation curtailed by any strained construction. No man would feel safe, either in purchasing lands, or in making lasting and beneficial improvements, if a quiet and uninterrupted possession of sixty or a hundred years might be interrupted by some latent claim. Were this, therefore, a new question, I should have no doubt either upon the letter or spirit of the statute. And this opinion is fully supported by a decision of the court of *king's bench*, in the case of *Doe*, d. *George*, v. *Jesson*. But this court has once decided the other way, and great respect is due to that adjudication. On a doubtful point, I should con-

June, 1810.

sider myself bound by it; but as the statute, in my judgment, is perfectly plain, I am constrained to say that its obligations are paramount to any precedent, however respectable.

BRAINERD, J. I thought that tenancy by the curtesy was the same here as in *England*; and that seisin in the wife during coverture was, of course, an indispensable requisite. On that ground he dissented to the opinion of the court.

EDMOND, J. concurred with N. SMITH, J. as to the construction of the statute of limitations; and with BRAINERD, J. as to tenancy by the curtesy.

New trial not to be granted.