STOCKWELL (UNITED STATES v.). See Cases Nos. 16,405 and 16,406.

STODDARD (BUNNEL v.). See Case No. 2,135.

## Case No. 13,468.

STODDARD et al. v. GIBBS.

[1 Sumn. 263.] [1]

Circuit Court, D. Rhode Island. Nov. Term. 1832.

HUSBAND AND WIFE — CURTESY — REMAINDER OR REVERSIONARY INTEREST.

In Rhode Island a husband is not entitled to a life estate, as tenant by the curtesy of any remainder or reversion owned by his wife, but only of real estate, of which she has an actual seisin, and possession in fee.

[Cited in Carson v. New Bellevue Cemetery Co., 104 Pa. St. 581; Shores v. Carley, 8 Allen, 426; Todd v. Oviatt, 58 Conn. 183, 20 Atl. 441; Watkins v. Thornton, 11 Ohio St. 369.]

Trespass and ejectment [by Bela J. Stoddard and others against Enos Gibbs] for certain land in Portsmouth, in the state of Rhode Island. Plea, the general issue. At the trial in June term last, the jury found a special verdict. The substance of it was, that the plaintiffs were entitled to three fifths of a moiety of the demanded premises,

---

[1] [Reported by Charles Sumner, Esq.]

as heirs at law of their mother, Eliza Gibbs, the wife of the defendant, who died in 1820, seised (as the heir of her mother) of a moiety of the reversion of the demanded premises, which were at the time of her death in the actual possession of her father, Peleg Thurston, who was tenant by the curtesy thereof, and who died afterwards, in December, 1831. The defendant claimed a life estate on the demanded premises, as tenant by the curtesy upon the death of his wife, the mother of the plaintiffs.

Mr. Hunter, for plaintiffs.
Cranston & Hazard, for defendant.

Mr. Hunter, for plaintiffs, in opening said, that the special verdict in this case presents but a single point, and that is, whether a husband can be a tenant by the curtesy, in a case where his wife had no seisin of the estate, to which it is agreed she was entitled as reversioner. It is submitted, that at common law there cannot be a doubt, that Enos Gibbs, the defendant, cannot be a tenant by the curtesy; for that requires actual seisin by the wife. In this case Gibbs' wife never had even a seisin in law. 1 Cruise, Dig. p. 140; Id. p. 124; 1 Co. Litt. 530. The husband in right of his wife never had possession, nor was either of them entitled to the possession. On the death of Peleg Thurston, the grandfather, in 1831, the right of entry to the reversionary interest commenced. Wallingford v. Hearl, 15 Mass. 471. The seisin of the wife must be an actual seisin, that is, possession of the lands; a man shall not be tenant by the curtesy of a remainder or a reversion. 2 Bl. Comm. c. 8. See 2 Gwil. Bac. Abr. p. 223; Watkins, 36, 111. The statute of Rhode Island does not alter the common law; it only repeats and affirms it. Laws R. I. 1822, p. 227, § 8. Dane (4 Abr. p. 657) cites the most and the best of the authorities. His conclusion is, there can be no tenant by the curtesy of a right, nor of a seisin in law, nor of a reversion or a remainder in a freehold. The words of the Rhode Island and of the Massachusetts statute of March 9th, 1784, are identical. In the analogous case of dower (Laws R. I. 1822, p. 188), an actual corporeal seisin, or a right to such seisin in the husband during the coverture, is indispensable to entitle his widow to dower, and a legal seisin of a vested remainder or reversion is not sufficient for that purpose. Eldredge v. Forrestal, 7 Mass. 253. A widow is not entitled to dower in the reversion expectant on the determination of a life estate, where the husband dies before the tenant for life. Williams v. Amory, 14 Mass. 20-27. And see Cook v. Hammond [Case No. 3,159].

For the defendant it was argued, that estates by the curtesy are governed by the same law in the states of Connecticut and Rhode Island. In the former state, it has been decided and settled by the highest judicial tribunal, that "seisin in the wife is

not necessary to entitle the husband to the estate by the curtesy." Reeve, Dom. Rel. pp. 33–35; 4 Day, 305. In the case there reported, the court say, "that our system of law respecting real property, is in many instances very different from the English system." "Seisin is necessary in their law, and ownership is sufficient in our law." "Since seisin is not necessary in case of descent to heirs, nor to pass lands by devise, why should it be necessary to the husband's title by the curtesy?" The decision of the court in this case is no departure from fixed rules and precedents. The English law respecting the efficacy of seisin has long been departed from, and to adhere to it in this case would mar the symmetry of our law." In the same case, the court observe, that these statutes of limitation respecting lands, have always been construed in conformity to the same principle, whilst the same words in the English statute have been construed, not as having any effect on the title, but only on the right of entry. A case reported by Judge Reeve (Dom. Rel. 35) appears to be exactly in point. A devised lands to his executors for payment of his debts, until his debts were paid. The executors entered. B, his daughter and sole child, married C, and by him had a living child; she died while the estate was in possession of the devisee's executors. The court decided, that C, the husband, was entitled to the curtesy. Dane (4 Abr. p. 663, tit. "Estate by Curtesy," c. 130, art. 4, § 30) recognises the foregoing, as the settled law in the state of Connecticut. Our system of law respecting real property we consider to be the same. The same construction is put upon our statute of limitations; and we know of no instance in which any doctrine has been advanced different from that expressed in the cases above referred to.

Mr. Hunter, in reply.

Our law in respect to curtesy is the law of Massachusetts and of all the other states of the Union (Georgia, Vermont, and Connecticut perhaps excepted). It is substantially the common law, the law of England. Referring to the authorities already produced, what doubt can there be as to that law? With great submission, the Connecticut decision is a mistake. The dissentient judges (4 Day, 305) were in the right. They did not assign their reasons in extenso, but they might be assigned by a true common law lawyer, and this without trenching upon what appears to be the principle adopted by the majority of the Connecticut court, namely, that ownership is the principle of the American law, as contradistinguished from seisin. With that principle in all its bearings, I have now nothing to do. It may be, as a generality, true; but there are exceptions. Curtesy is not the creature of feudality. It existed anterior to it, and has continued in a great degree independent of it. The feudal maxim, "Non jus sed seisina facit stipitem," may be enforced in England,

or abrogated in America, and yet the seisin of the wife continue to be the indispensable requisite of the curtesy of the husband. He is preëminently tenant by the curtesy of England, and so far as regards the Norman of "unconquered and unfeudalized England" for the reason assigned by Littleton, because this is used in no other realm, but in England only. The root of the doctrine of curtesy is in a rescript of Constantine. It is one of the few unmutilated monuments of Roman jurisprudence. Dower is probably of Danish origin, and both curtesy and dower are distinct from the doctrine of feuds, and in a great degree opposed to it. See Wright, Ten. 194; Feud. Lib. c. 1, tit. 15; 2 Wood. Lect. 18; 2 Bl. Comm. 126, Christian's note. An actual entry, or pedis positio, in certain cases, may not be necessary; but the exceptions prove the general rule, and the present is an abstract case, unmarked by any peculiarity, arrogating no exemption, seeking refuge in no exception. Beekman v. Sellick, 8 Johns. 262. As contradistinguished from curtesy, seisin in law is sufficient for dower; the wife is presumed to have no power of obliging her husband to take possession; it is therefore holden in her favor, that the right to the immediate possession is equivalent to his actual possession. Doe v. Hutton, 3 Bos. & P. 643. Even on the supposition, that this distinction does not exist, and that the intention is to harmonize the law of dower and curtesy, the words of the Rhode Island statute being in both cases the same; yet nevertheless, in the case at bar, the special verdict shows, that there was at no time, during the life of the feme, a right to possession. There was not even seisin in law. The mother of the present plaintiffs was entitled to a reversion in fee, out of which a freehold interest was carved, namely, the life curtesy estate of her own father; she had therefore not even a seisin at law, much less an actual seisin. Curtesy is an estate, uxore juris. In this case, events obstructed and literally prevented an estate, an ownership in the wife. What could the husband take and enjoy, when there was nothing for the wife to take and enjoy? 1 Rolle, Abr. 674; Co. Litt. 32; Boraston v. Hay, Cro. Eliz. 415; Wing. Max. 581. Where there is an intermediate freehold estate, there is no seisin either actual or legal. At common law the death of the owner of the remainder, or the expectant reversion, during the continuance of the life or other estate, prevented his possession and enjoyment. He had nothing, and of course transmitted nothing. Jackson v. Hendricks, 3 Johns. Cas. 214; Bates v. Shraeder, 13 Johns. 260. But there is a more general, perhaps a more philosophical view that may be presented. It may be sneered at as pedantic or far sought. It however relieves the law of curtesy from the opprobrium of being obstructed in its beneficent tendency, by what is deemed by some to be an obsolete or inappli-

cable principle of feudal law. To know how much of the law of feuds was adopted in England, and from which of its tenures, we must resort to the law of feuds. By that law the husband did not succeed to the wife's feud. The curtesy of England therefore does not depend on the feudal law, but on the rescript of Constantine,—in truth, on the civil law. That law is in general founded on the law of nature, that is, on general ethical fitness,—certainly not on a system in most respects artificial and peculiar, and in some barbarous and absurd. Now what is the general tendency of the rescript of Constantine, in regard to marital rights? It may be answered, that it is in conformity to the most sagacious moral conclusions. The rights of the husband had reference to his actual prosperous duties and enjoyments. If he had living children, and his wife had an estate, of which he enjoyed the use, rents, and profits, of that estate he was not to be deprived by the death of his wife. Because an accustomed enjoyment was not to be altered or diminished; because a vested interest was not to be destroyed; and because it is more fit that the father should be independent of the insolent heir (using the word "insolent" in its primitive Latin civil-law sense,—unused to,—"in soleo"), than that heir of the father. It is easy to find traces of these thoughts in the earliest reports and abridgments, though the true source is not always disclosed, from which they flowed. They all in substance concur in saying, it would be cruel to take from the husband that estate, rank, or condition he had possessed or enjoyed with his wife. If he had not so enjoyed it, there was no deprivation and no cruelty, and the children, who are by law and nature entitled, may justly, equitably, and immediately occupy and enjoy. Though perfectly sincere on this point, I dare not pursue it. It is presumptuous to attempt to be rational in the argument of a strict point of common law, in an action of ejectment.

From the mutation of human affairs, and the direction of the artificial forms of modern society in England, the instances both of curtesy and dower recur a hundred-fold oftener in this country than now in England. Without abandoning therefore the true, perhaps stern doctrine of the common law, we say, that, if the statutes of Rhode Island and Massachusetts mean that the seisin should be alike in dower and curtesy, and thus so far alter the common law, the case at bar presents the occasion, if need be, for this being so said. The plaintiffs are then protected and entitled. Reverse the case, and call it dower, could the wife possess that which the husband never did possess, nor could in his life-time claim for the purpose of possession?

STORY, Circuit Justice. There is but a single question in this case, and that is, whether in Rhode Island a husband is entitled to a life estate, as tenant by the curtesy, of land of which his wife was in her lifetime seised in fee in reversion. If this question were to be decided by the common law, it would not admit of controversy. Nothing is better settled in that law, than that there can be no curtesy of a remainder or reversion. Mr. Justice Blackstone, in his Commentaries (2 Bl. Comm. 127), lays it down as one of the elements of the common law. "There are (says he) four requisites necessary to make a tenancy by the curtesy; marriage, seisin of the wife, issue, and death of the wife. 1. The marriage must be canonical and legal. 2. The seisin of the wife must be an actual seisin or possession of the lands; not a bare right to possess, which is a seisin in law, but an actual possession, which is a seisin in deed. And, therefore, a man shall not be tenant by the curtesy of a remainder or reversion." And this language is fully borne out by Lord Coke, in his Commentary on Littleton. Co. Litt. 29. Now, the common law was expressly adopted by a statute of Rhode Island as early as the year 1700, as the rule in all cases, where no particular colonial law existed on the subject. Laws R. I. 1744, p. 28. Of course the common law must prevail, unless there is some statutory provision, which has since that period intercepted or varied its application. Let us see, then, whether any such provision exists. By the statute of descents of Rhode Island (1798, 1822), it is enacted, that "when a man and his wife shall be seised of any real estate in her right in fee, and issue shall be born alive of the body of such wife, that may inherit the same, and such wife shall die, the husband shall have and hold such estate during his natural life, as tenant by the curtesy." Laws R. I. 1822, p. 227, § 8. Now this description of a tenant by the curtesy is in substance the same, which Littleton (section 35) has given of a tenant by the curtesy at the common law: "Tenant by the curtesy of England (says he) is where a man taketh a wife seised in fee simple, or in fee tail, &c., and hath issue by the same wife, male or female, born alive, albeit the issue after dieth or liveth, yet if the wife dies, the husband shall hold the land during his life by the law of England." Now, my Lord Coke, commenting on this very passage, says, that the words, "seised in fee," mean a seisin in deed, not a seisin in law; and therefore a man shall not be tenant by the curtesy of a bare right, title, use, or of a reversion or remainder expectant upon an estate of freehold, unless the particular estate be determined or ended during the coverture. Co. Litt. 29. See Cruise, Dig. pp. 159, 160, tit. 5, c. 1, § 1. So that it is clear, that the words, "seised in fee," do not necessarily, in the language of the law, import a seisin in deed, that is, a present estate in fee in possession. Now, since the rule of the common law was not only well known, but had been adopted in Rhode Island, it would

be natural to expect, if the legislature intended to modify or repeal it, that some language would be used, which should unequivocally, and in terms susceptible of no doubt, express that intention. In such a case we should not expect to find the very language used, which the most accurate writers upon the common law were accustomed to use, to express the very rule of that law. Co. Litt. § 3; Cruise, Dig. pp. 159, 160, tit. 5, c. 1, § 1; Bac. Abr. tit. "Courtesy," C, 2; Com. Dig. tit. "Estate," D, 1; Dane, Abr. c. 130, art. 3, § 1; Buckworth v. Thirkell, 3 Bos. & P. 652, note. Would it be safe for any court to adopt an interpretation, abolishing the common law rule, upon so loose a foundation?

The statute of Massachusetts respecting tenancy by the curtesy, is in precisely the same terms, as that of Rhode Island; and probably the latter was borrowed from the former. See Act March 9, 1784; St. 1783, c. 36. The uniform interpretation of the Massachusetts statute has been, that it does not vary the rule of the common law. Dane, Abr. c. 130, art. 3, §§ 1–3. This is strong evidence to show, what the fair interpretation of the terms is; or, at least, it shows, that the language reasonably admits of an interpretation consistent with the rule of the common law, and in affirmance of it. The language of the Rhode Island statute respecting dower, uses terms nearly the same. It declares, that the widow shall be endowed of one third part of the lands, &c., "whereof her husband, or any other to his use, was seised of an estate of inheritance at any time during the coverture." Laws R. I. 1822, p. 188. Yet, I presume, it was never contended, that this applied to a seisin in law, such as a seisin of a reversion or a remainder. But it is said, that in the state of Connecticut the doctrine has been settled upon solemn argument, that actual seisin in the wife during the coverture, is not necessary to entitle the husband to a tenancy by the curtesy of her estate. That certainly was the doctrine of the majority of the court in Bush v. Bradley, 4 Day, 298, 305. and is probably now deemed the settled law of that state. Reeve, Dom. Rel. pp. 33–35. But it is observable, that the decision in that case was not founded upon any positive language of the legislature, directly applicable to the case. There was no statute of Connecticut, which called for any interpretation by the court. The doctrine was avowedly founded upon analogies furnished by the local law of the state. It was said, that the statute of limitations of Connecticut in its terms did not take away the title of the original proprietor, but only tolled his right of entry; and yet that it had always been construed to bar all claim of title; while the same words in the English statute had been considered as having no effect whatever upon the title, but only upon the right of entry. It was also said, that actual seisin was not necessary in cases of descents or devises; but that it was sufficient, that there was a right of property.

And if not necessary in such cases, the question was asked, why should it be thought necessary to the husband's title by the curtesy? And the conclusion, to which the court arrived, was, that the English law respecting the efficacy of seisin had long since been departed from in Connecticut, and to adhere to it in the case of the curtesy would mar the symmetry of the law of that state.

Now, however satisfactory this reasoning was to the learned judges, who decided this case, it has not been deemed equally satisfactory to other learned judges in other states, where the local jurisprudence furnished, in whole or in part, similar analogies. They have held, that the common law rule must prevail, until altered by the legislature; and that they were not at liberty to imply such a repeal upon mere analogy. This doctrine is, a fortiori, to be followed in Rhode Island; for, the common law having been adopted by statute in that state, nothing short of a legislative repeal, either express or necessarily implied, could justify any court of justice, sitting in that state, in an abandonment of it. Now, I confess, that I see not the slightest reason for supposing, that the legislature, in the statute already cited, had the least intention to repeal the common law in regard to tenancy by the curtesy. The language of the statute is merely affirmative, leaving what is intended by the words, "seised of any real estate," &c., to be ascertained upon the sound rules of interpretation applied to similar cases. It is a general rule of construction, not to presume the common law repealed by a statute, unless the language naturally and necessarily leads to that conclusion. Besides, though the language is not inconsistent with a larger intent, yet the subsequent words, "the husband shall have and hold such estate during his life," more naturally apply to a present possessory estate, than to one, which may never fall into possession during his life. The Connecticut law, however, cannot apply to the present case; and indeed is repugnant to the statute of Rhode Island. By the decision alluded to, it is not necessary, that the wife should have any seisin, either in law or fact, of the estate, to give her husband an estate by the curtesy. In the very case decided, she was actually disseised at all times during the coverture; and yet her husband was held entitled, as tenant by the curtesy. Now, the statute of Rhode Island positively requires a seisin in the wife during the coverture. Nor, indeed, in another view, is the Connecticut decision in point. There the wife had a present estate, of which she was, though disseised, entitled to a present possession. No question arose as to curtesy of a reversion or remainder. How that question would have been decided, if it had arisen, this court have no means of ascertaining.

I cannot agree with one remark of the counsel for the plaintiff in the present case, that Eliza Gibbs, the mother of the plaintiffs, was

not seised in law of the estate, because she had only a reversion therein, after the tenancy of her father by the curtesy should expire. My opinion is, that there can, technically speaking, be a seisin in law of a reversion, though not in deed; and that such was her predicament. She was, in the strictest sense of the terms, seised of the reversion. See Cook v. Hammond [Case No. 3,159]; Plow. 191.

Upon the whole my opinion is, that the plaintiffs upon the special verdict are entitled to recover their purparty, as heirs of their mother, Eliza Gibbs.

The district judge concurs in this opinion, and judgment is to be given accordingly.