## KELSEY and wife and others *against* HANMER.

*Litchfield,*
August, 1847.

Kelsey
*v.*
Hanmer.

| 18 | 311 |
| 59 | 115 |
| 18 | 311 |
| 70 | 190 |
| 18 | 311 |
| 75 | 68 |

Where a husband and wife, in an action of ejectment, alleged, that the plaintiffs were well seised and possessed of the demanded premises; and on the trial, the evidence offered in support of their title, proved, that the wife was seised in her own right, and the husband only in her right; it was held, that it was not necessary for the plaintiffs to state in what manner they were interested; and as the evidence showed that both " were well seised and possessed," it supported the declaration.

Evidence of the loss of an instrument, in order to entitle the party to give secondary evidence of its contents, is sufficient, if it show, that he has done all that could be reasonably expected of him, under the circumstances of the case, in searching for such instrument.

Therefore, where the grantee of a deed was dead; the administrator upon his estate made diligent search among his papers, and could not find it; his former partner, at the request of the administrator, made diligent search among the papers in the counting-room, where the deceased sometimes kept his private papers, and could not find it; and it did not appear, that it was ever in the possession of any other person than the grantee, after its delivery; it was held, that the loss of the deed was sufficiently proved.

In the case of a lost instrument, it is incumbent upon the party to prove, not only its loss, but its existence as a genuine instrument, before he can give evidence of its contents.

Where the party claiming under a lost deed, called one of the subscribing witnesses, who was unable, from want of recollection, to identify the instrument; but the party did not call the other, or prove his death, or otherwise account for his absence; it was held, that there was not a sufficient foundation for the admission of secondary evidence.

*It seems,* that if it had been shown, in such case, that the absent witness was dead, or in a situation where his testimony could not be had, secondary evidence would be admissible.

Although a party claiming title to land, by virtue of a deed to himself, must produce it in evidence, or show its loss; yet he may give in evidence copies from the public records, of all deeds necessary to trace the title to his immediate grantor, without producing the originals; and these copies are not only evidence of the contents of such deeds, but *prima facie* evidence of their existence as valid instruments, executed in the manner indicated by the copies.

This rule, being a departure from the common law, growing out of our recording system, is restricted to instruments required by law to be recorded in our public records.

A party claiming title by descent from a grantee, is bound to produce the deed to such grantee, in the same manner as the grantee would be, if he were the party.

But where the party, by showing the loss of the deed, has established his right to give in evidence a copy from the public records, that copy, when thus produced, will have the same effect as any other copy of a deed from the same records.

A new trial will not be granted, unless the court can see, that injustice either was, or might have been, done, on the former trial.

Therefore, where the plaintiff, in an action of ejectment, claimed title, first, by

*Litchfield,*
*August, 1847.*

Kelsey
*v.*
Hanmer.

virtue of an absolute deed to him from the defendant, and afterwards, by virtue of a mortgage deed of the same property, to secure a debt which was outstanding and unpaid; after a verdict for the plaintiff, it was held, on a motion for a new trial, that if the former deed was improperly received in evidence, yet as the latter deed showed a complete title in the plaintiff, which would alone entitle him to a recovery, a new trial ought not to be granted.

THIS was an action of ejectment, brought by *Albert Kelsey* and *Mary Kelsey*, his wife, and *Samuel Smith* and *Susan M. Smith*, his wife, demanding the seisin and possession of a parcel of land, particularly described. The declaration alleged, that of this parcel of land, the plaintiffs, on the 20th day of *July* 1843, were well seised and possessed, and remained so seised and possessed until the 5th day of *August* 1843, when the defendant, without law or right, and contrary to the mind and will of the plaintiffs, thereinto entered and ejected the plaintiffs therefrom, and have ever since continued, and still does continue, to deforce and hold the plaintiffs out of the possession of the premises, taking the rents and profits to himself.

The cause was tried, on the general issue, at *Litchfield, August* term, 1846, before *Church, J.*

On the trial, it was proved and admitted, that *Mary Kelsey*, one of the plaintiffs, wife of *Albert Kelsey*, and *Susan M. Smith*, another of the plaintiffs, wife of *Samuel Smith*, were the children and heirs at law of *Jason Kilbourn*, deceased; and they claimed the demanded premises, only as such heirs at law; and their husbands claimed only in the right of their wives.

The plaintiffs, for the purpose of proving that *Kilbourn*, at the time of his decease, was the owner of the premises described in the declaration, and had the legal title thereto, offered in evidence, 1. a document dated *January* 22d, 1836, purporting to be a copy of an original deed, from the defendant to *Kilbourn*, recorded upon the records of deeds of the town of *Colebrook*, in which the premises were situated, duly certified by the town-clerk, accompanied by evidence that the original deed was lost or destroyed. To prove such loss or destruction, they proved, by the administrator of *Kilbourn*, that he had made diligent search among the papers of the deceased, for the original deed, and could not find it; also, that both before and since the death of *Kilbourn*, his wife was at times deranged. They also proved, by *Theron Rockwell*, Esq., whose

name purports to be affixed to the deed, as a subscribing witness, and as the magistrate before whom the deed was acknowledged, that he was a partner in business with the deceased ; and that the deceased sometimes kept his private papers in the counting-house of the firm ; and that, at the request of his administrator, he had made diligent search among the papers in the counting-house, and could find no original deed from the defendant to the deceased ; and also, that the defendant was in the habit of drawing his own deeds, and of applying to him, the witness, from time to time, to witness them, and take the acknowledgment thereof ; that at some time previous to the death of *Kilbourn*, the defendant called upon him, the witness, to take the acknowledgment of two or more deeds ; but he had no recollection that he read them, or knew their contents ; and that about the time when the deed in question purports to have been acknowledged, *Freelove Rose*, whose name purports to be subscribed to it as one of the subscribing witnesses, was a member of *Kilbourn's* family. To the introduction of this copy in evidence, without further proof of the loss of the original, and without further proof of its execution, and of the contents thereof, the defendant objected ; but the court admitted it.

The plaintiffs, also, in further support of their title, offered in evidence, 2. a mortgage deed of the same land, from the defendant to *Kilbourn*, dated the 22d day of *January* 1836, the execution of which was proved, accompanied by the note described in the condition of such deed, the execution of which was also proved. The plaintiffs offered also to prove, that the defendant, since the death of *Kilbourn*, had acknowledged that said note was still outstanding and unpaid.

The defendant then objected to the whole evidence offered by the plaintiffs, on the ground that it did not conduce to prove the title set up by the plaintiffs in their declaration. The court, however, admitted it.

The jury, having returned a verdict in favour of the plaintiffs, the defendant moved for a new trial, on the ground that the court erred in admitting such evidence.

*Church* and *Goodwin*, in support of the motion, contended, 1. That the evidence offered by the plaintiffs, did not support the declaration. The plaintiffs, in their declaration, allege a

*Litchfield,*
August, 1847.

Kelsey
*v.*
Hanmer.

joint seisin of the husband and wife, claiming a joint estate. The evidence is of a seisin of the wife in her own right, and of the husband in her right. The exact title of the plaintiff must be stated. 2 *Chitt. Plead.* 201. 2 *Wms. Saund.* 283. n. 1. *Michell* & ux. v. *Hughes*, 6 *Bing.* 689. (19 *E. C. L.* 206.) *Clan.* 161, 2.

2. That the evidence offered to prove that the deed from the defendant to *Kilbourn*, was lost, was not sufficient to establish that fact. In the first place, the evidence did not prove a loss of any thing. Secondly, if a paper had been lost, it was not proved to be the deed in question.

3. That there was no evidence conducing to prove the execution and contents of the deed. The loss of an instrument does not dispense with proof of its due execution. *Kimball* v. *Morrell*, 4 *Greenl.* 368. Without such proof, a copy from the town-clerk's office is of no avail; otherwise any person may make out a deed to himself of another man's farm, and after getting it recorded, support his title by a copy.

4. That because there was an unsatisfied mortgage in this case, it does not follow, that no injustice has been done, by the verdict. The jury may have given it solely on improper evidence regarding the deed first produced, and principally relied on.

*Holabird*, contra, contended, 1. That there was no discrepancy between the declaration and the proof. The declaration states a joint seisin and possession by the plaintiffs; and this allegation is proved, by the deed to *Kilbourn*, the descent to his daughters, the relation subsisting between them and the other plaintiffs, and the possession of all. In ejectment, the plaintiff need not set out his title. If there are two or more plaintiffs, it is sufficient for them to allege, that they were seised and possessed, at the time of the eviction, without saying *how*. The object of this action is to recover possession; and the plaintiffs had unquestionably a joint possession. The wives possessed jointly, because they were joint owners; and the husbands possessed jointly with them, by virtue of their marital relation. If it had been averred in this declaration, that the husbands were seised in right of their respective wives, this would have been still an allegation of a joint seisin.

Husband and wife are always, during coverture, jointly seised of her lands.

2. That there was sufficient evidence of the loss or destruction of the deed. Reasonable diligence was used to find it; and it could not be found. This is all that is ever required.

3. That the copy from the town-clerk's office was *prima facie* evidence of the due execution of the deed and of its contents, proper to go to the jury; and the jury, whose province it was to decide upon the weight of that evidence, were satisfied. *Prima facie* evidence always becomes conclusive in effect, where there is no opposing evidence.

4. That laying the absolute deed from the defendant to *Kilbourn*, and all the evidence relating to it, out of the case, the mortgage deed alone was sufficient to support a verdict for the plaintiffs; and consequently, a new trial will not be granted.

WAITE, J. A new trial is claimed, in this case, upon several grounds.

1. It is said, that the evidence offered by the plaintiffs, did not conduce to prove the title set up in the declaration. The averment there, is, that the plaintiffs were well seised and possessed of the demanded premises, which, the defendant claims, implies a joint seisin, whereas the evidence offered shows, that the two husbands were seised only in right of their wives; and to justify the admission of the evidence, the averment should have been according to the fact.

If the plaintiffs could prove a conveyance to all the plaintiffs—to the husbands as well as to their wives—the declaration, it is admitted, would, in its present form, be supported. But evidence which merely shows a title in the wives, without any title in their husbands, except what accrues to them in consequence of their marital relations, does not, as the defendant insists, support the averment of title.

This objection, in our opinion, is not well founded. In this state, we have but one form of action for the recovery of the possession of real estate, called indiscriminately, an action of ejectment, or an action of disseisin. The form of the declaration is in general terms, and is usually the same, whether the object be to recover possession of an estate in fee, for life, or for years, or any undivided share of the same. The plaintiff

may, indeed, at his election, set out his title specially, and describe the precise interest which he claims to recover ; but this, by our law, is not required, nor is it usual in practice.

The plaintiffs aver, in their declaration, a seisin and possession of the demanded premises, in the most general terms ; and if, on trial, they can prove a title to any portion of the property, or any undivided share of it, or that they have an estate therein even for years, they may recover accordingly. 1 *Sw. Dig.* 507. *Bush* v. *Baldwin,* 4 *Day* 298. *Smith* v. *Sherwood,* 4 *Conn. R.* 283. *Chalker* v. *Chalker,* 1 *Conn. R.* 92. *Barrett* v. *French, Id.* 364. *Clark* v. *Vaughan,* 3 *Conn. R.* 191. 193.

If the female plaintiffs, in this case, were seised of the demanded premises, as heirs of their father, it is not denied but that it was necessary for their husbands to unite with them in the suit. Indeed, the law upon this subject is explicit. *Watson* v. *Watson,* 10 *Conn. R.* 88. *Michell* & ux. v. *Hughes,* 6 *Bing.* 689. (19 *E. C. L.* 205. 207.) The only objection is, that the plaintiffs have not stated, in their declaration, *in what manner* the husbands are interested. But this description of their title can be no more necessary, in the present, than in any other case. As the *English* forms of action for the recovery of the possession of real estate, have never been adopted here, it becomes unnecessary to examine the rules that would be applicable to their forms.

2. In the next place, it is claimed, that the evidence to prove the loss of the first deed, was not sufficient to justify the admission of secondary evidence of its contents.

Upon a former occasion, when speaking upon this subject, we remarked, that it was very difficult to lay down any general rule as to the degree of diligence necessary to be used in searching for an original document, to entitle a party to give secondary evidence of the contents. *Witter* v. *Latham,* 12 *Conn. R.* 399. Much depends upon the circumstances of the case, and the character of the document. In general, the best evidence which the nature of the case admits of, will be required. Perhaps the case best calculated to illustrate the rule, as applicable to the one under consideration, is a case tried before Ch. J. *Best.* *Parkins* v. *Cobbett,* 1 *Car. & Pa.* 282. (11 *E. C. L.* 395.) The defendant sought to give parol evidence of the contents of a letter sent to him by the plaintiff.

To prove the loss of the original letter, he called his son, who testified, that when the letter was received, the defendant gave it to his daughter to take care of, as was his practice with his letters; and that two days before the trial, the witness and a sister searched in all the places where the defendant's letters were kept, and could not find it. The judge held, that if the letter had not been traced to the daughter, he should have considered the evidence of the loss sufficient, because no better evidence could reasonably be expected; but as the letter had been traced to the daughter, she ought to be called, before secondary evidence could be admitted. *Brewster* v. *Sewell,* 3 *B. & Ald.* 296. (5 *E. C. L.* 291.) *Freeman* v. *Askell,* 2 *B. & Cres.* 494. (9 *E. C. L.* 159.)

Here the inquiry relates to a deed given to *Kilbourn,* who has since died. The administrator upon his estate has made diligent search among the papers of the deceased, and cannot find the instrument. The former partner of the deceased says, that he sometimes kept his private papers in the counting-house of the firm, and that, at the request of the administrator, he has made diligent search among the papers in the counting-room, and can find no such deed. And there is no evidence that it was ever in the possession of any person, except the grantee, after the delivery. This evidence clearly shows, that the plaintiffs have done all that could reasonably be required of them, in searching for the deed. No evidence has fallen under our observation, where secondary evidence was rejected under like circumstances. *Page* v. *Page,* 15 *Pick.* 368.

3. Again, it is said, that if the plaintiffs have proved the loss of the deed, they have failed to prove its due execution; and until that is done, secondary evidence of the contents is inadmissible. 1 *Stark. Ev.* 340. We fully agree, that it was incumbent upon the plaintiffs to prove, not only the loss of the deed, but its existence as a genuine instrument, before they could give evidence of the contents. *Doe* d. *Clark* v. *Trapaud,* 1 *Stark. R.* 281. *Gillies* v. *Smither,* 2 *Stark. R.* 528. They called a witness, *Theron Rockwell,* who appears, from the copy, to have been one of the subscribing witnesses, and the magistrate before whom the acknowledgment was taken; but he was unable to identify the instrument. There is, however, another subscribing witness, who has not been

*Lltchfield,*
August, 1847
———————
Kelsey
*v.*
Hanmer.

called, and whose absence is not accounted for.   If the plaintiffs cannot prove the execution of the deed, by one of the subscribing witnesses, they are bound to call the other, or show why that other cannot be produced.   Had they shown that this witness was dead, or in a situation where her testimony could not be had, then they might well say, we have produced all the evidence in our power.   One witness, from want of recollection, is unable to identify the deed; the testimony of the other cannot be obtained; and the deed is lost, so that we cannot prove the hand-writing of the grantor, or of either of the subscribing witnesses.   Under these circumstances, it would seem to be reasonable, that they should be permitted to introduce their secondary evidence.   But the difficulty here is, that they have not called one of the subscribing witnesses, nor shown why they could not prove the execution, if they had done so.

4. But there is another consideration, connected with this part of the case.   The plaintiffs have produced in evidence a copy of the deed from the public records, duly certified as such.   Does this copy furnish evidence, not only of the contents of that deed, but of its existence as a *genuine instrument*?   The judge presiding on the trial, in the court below, so held; and, upon that ground alone, admitted the copy.   In so ruling, he followed a decision formerly made by the superior court, then composed of three judges.   That decision, although a sufficient authority for him on the circuit, and entitled to great respect, from the character of the judges composing the court, is, nevertheless, not conclusive upon us.   It becomes necessary, therefore, for us to enquire, whether the doctrine thus recognized, is founded upon correct principles.

Our recording system has made material innovations upon the rules of the common law.   Thus, it has become long settled, in this state, that a party claiming title to lands, by virtue of a deed to himself, must produce it in evidence, or show its loss.   But he may give in evidence copies from the public records, of all deeds necessary to trace the title to his immediate grantor, without producing the originals.   The copies are not only evidence of the contents of these deeds, but *prima facie* evidence of their existence as valid instruments, executed in the manner indicated by the copies.   And if their validity is denied, the burden of proof is thrown upon the opposite

*Litchfield,*
August, 1847.

Kelsey
*v.*
Hanmer.

party. The reason assigned for the rule, is, that the title-deeds here do not pass with the land, as in *England*, but each grantor retains in his own possession his title deeds, even after he has parted with the lands conveyed by them. And it would subject a party to great trouble and inconvenience, to require him, in tracing out a title, to produce all the original deeds. *Buck* v. *Baldwin*, 4 *Day* 298. *Clark* v. *Mix*, 5 *Conn. R.* 174.

This rule, however, does not apply, except where copies are produced from the public records, of instruments by law required to be there recorded. Had the plaintiffs, in the present case, attempted to prove the contents of the deed, by any other evidence than a copy from the public records, no doubt would exist, but that the common law rule would govern, and they would be obliged to offer some evidence of the legal existence of the original deed, before evidence of its contents could be received.

Again, if the plaintiffs had claimed title from *Kilbourn*, by deed, instead of descent, then having produced the original deed from *Kilbourn*, under our rule, they might have read in evidence a copy of the deed from the defendant to *Kilbourn*, without any other evidence of its execution than that furnished by the copy itself. They would have been under no obligation to produce the original deed, or account for its loss.

But as the plaintiffs claim not by deed, but by descent from *Kilbourn*, it has been holden, that they are bound to produce the deed to *Kilbourn*, in the same manner as *Kilbourn* would be, if he were the plaintiff in the suit. But as the plaintiffs, by showing the loss of the deed to *Kilbourn*, have established a right to give in evidence a copy from the public records, the question arises, whether it shall not have the same effect, when thus produced, as any other copy of the deed from the same records.

It is obvious, that there are many reasons, which might be urged in support of the affirmative of this question. The subscribing witnesses may be dead, or gone, so that they cannot be produced. In such case, if the deed is lost, no evidence can be produced of the genuineness of their signatures, even if the subscribing witnesses are produced. As it is not usual for attesting witnesses to read the deed, or inquire into the contents, they are deprived of the ordinary means of refresh-

ing their recollections, by an examination of their own signatures ; but perhaps the better reason results from the character of our public records, and the effect given to copies from them in other cases.

In *Massachusetts*, they have a recording system very similar to ours ; and this precise question has often come before their courts ; and the rule there established is, that in all cases where a party is authorized to read in evidence a copy of a deed from the public records, he need not give other evidence of the execution of the original, than that which is furnished by the copy itself ; which should be deemed *prima facie* evidence of the genuineness of the original deed. *Eaton* v. *Campbell,* 7 *Pick.* 10. *Hatherway* v. *Spooner,* 9 *Pick.* 23. *Ward* v. *Fuller,* 15 *Pick.* 187. *Scanlan* & ux. v. *Wright,* 13 *Pick.* 523. 527. *Powers* v. *Russell, Id.* 69. 75.

Upon the whole, we are satisfied, that the rule thus recognized, is correct in principle, and in harmony with the other rules already established in relation to copies from the public records ; and we are the more confirmed in this opinion, by the decision already alluded to in our own courts.

For these reasons, we think the copy of the deed was properly admitted.

5. But were the defendant right in his claim as to the evidence in relation to the first deed, we do not see how, upon the facts stated in the motion, a new trial can be granted.

After his objections to that evidence were made, the plaintiffs produced another deed, covering the same property, given to secure the payment of a certain note, which was still outstanding and unpaid ; and no reason is shown why that deed does not prove a complete title in the plaintiffs.

The rule is a familiar one, that a new trial will never be granted, unless the court can see that injustice either was, or might have been, done, on the former trial. *Lester* v. *The State,* 11 *Conn. R.* 418. *Selleck* v. *The Sugar Hollow Turnpike Company,* 13 *Conn. R.* 460. *Johnson* v. *Blackman,* 11 *Conn. R.* 342. *Williams* v. *Cheesebrough,* 4 *Conn. R.* 356. *Hoyt* v. *Dimon,* 5 *Day* 479. *Alsop* v. *Magill,* 4 *Day* 42. *Prince* v. *Shepard,* 9 *Pick.* 183. *Thompson* v. *Lathrop,* 21 *Pick.* 336.

If no valid objection can be urged against the deed in question, how has the defendant been injured, by the verdict in

the cause ?　It is indeed said, that the court cannot see but that the verdict may have been founded entirely upon the evidence in relation to the first deed.　That is very true. But it is very apparent, that it might have been well founded upon the last deed alone.　Were the case to be sent back to be tried upon the title created by that deed, unless something more were shown than what now appears, a verdict against the plaintiffs, for want of proof of their title, would be a verdict against evidence, and a sufficient ground for a new trial.

We are, therefore, satisfied, that the defendant has not shown sufficient cause for granting a new trial.

In this opinion the other Judges concurred.

*New trial not to be granted.*