## THE INHABITANTS OF THE TOWN OF WATERBURY *against* CYRUS CLARK.

The town of *Waterbury* is by law obliged to maintain the bridge over *Mad River* in the line of the *Waterbury River Turnpike Road.*

Where the act incorporating a turnpike company provided, that *all bridges over such rivers and streams as towns had not previously by law been liable to build and maintain, should be built and maintained by the company ;* it was held, that the company was obliged to build and maintain bridges only where, by the elevation of the turnpike road, they became necessary over openings for the outlet of water, though none were necessary before, and also where the road passed over such small bridges as had usually been erected by the districts, in the usual mode of repairing highways; the general law requiring all other bridges to be built and maintained by the town where situated. And the act of incorporation having thus designated what bridges should be built by the company, the stat. tit. 166. c. 2. s. 3. did not apply; and all evidence to show by whom the bridge was built was, of course, irrelevant and inadmissible.

The acts of the directors of a turnpike company, not authorized by a vote of the corporation, are inadmissible as evidence.

WRIT of error.

This was a complaint against the town of *Waterbury* for neglecting to repair a bridge over *Mad River,* in that town, in the line of the road belonging to the *Waterbury River Turnpike Company.*

On the hearing before the county court it was admitted that the bridge was out of repair; and the principal point in controversy was, whether the *onus* of repair lay

on the turnpike company, or on the town? It appeared that the act incorporating the turnpike company contained the following clause: " That the bridge across *Waterbury River* near *Samuel Reynolds's*, in *Plymouth*, shall be built and kept in constant repair by said company; and *all other bridges over such rivers and streams as towns have not heretofore by law been liable to build and maintain* shall also be built and maintained by said company." There was also a subsequent clause in these words: " That said company shall, at all times, at their own expense, keep said road, and *the bridges to be by them built*, in good repair." It was admitted, that no bridge had ever been built at the place in question, nor any road laid out there, before this act of incorporation was passed. The defendants first proved, that the turnpike company had instituted a suit against them for the reimbursement of the sums expended by the company in building the bridge; and then offered two votes of the company, duly authenticated, appointing agents to prosecute such suit to final judgment, with a view to establish the fact that the company built the bridge. Connected with this evidence, the defendants also offered to prove, by competent witnesses, that the bridge was built in the month of *October*, 1802, by two of the directors of the company, for, and in behalf of the company, without the request of the defendants. To the admission of all the evidence thus offered the complainant objected; and the court held the same to be inadmissible. In the further progress of the trial, the defendants proved to the court, that by the by-laws of the company it was provided, that there should be chosen annually, by ballot, a number of directors not exceeding seven, whose business it should be, in behalf of the company, to enter into any contracts for repairing the road, in such manner, and on such terms, as they should judge most for the advantage of the company; and then offered to prove, by *William Leavenworth*, who, it was ad-

June, 1810.

WATER-
BURY
v.
CLARK.

mitted, was one of the directors, that he built the bridge by direction of the company, and for their use, and that the company soon afterwards paid him for it. This evidence was also objected to, and rejected by the court. A decree being passed against the defendants, a bill of exceptions was filed, and a writ of error brought. The superior court affirmed the judgment of the county court.

*Daggett*, for the plaintiffs in error. By this writ of error the plaintiffs seek to reverse the judgment of the superior court, affirming the judgment or decree of the county court, directing the town of *Waterbury* to repair the bridge in question.

1. The testimony offered by the town of *Waterbury* was rejected by the county court against the plainest principles of law. It was offered to prove, that the *Waterbury River Turnpike Company* built the bridge as a part of their turnpike road, and thereby to prove that by the statute tit. 166. c. 2. s. 3.(a) it was the duty of the company to build this bridge, and to keep it in repair. The only question on this part of the case is, did the testimony *conduce* to prove the fact that this bridge was built by the company? Whether it was *sufficient* evidence is a different question; though of this there could be little doubt. Votes of the turnpike company appointing agents to build and repair the road, and proof that those agents built the bridge; votes appointing agents

(a) The provision of the statute referred to is in these words: " That in all cases where the incorporating act of any turnpike company does not designate what bridges on their road shall be built by them, and those which shall be built by the town where situated; and such company, in building and putting such road in repair, have built any bridge or bridges, which otherwise might have belonged to the town where situated to have built, it shall be conclusive evidence that such bridge belonged originally to such company to build and keep in repair."

to prosecute a suit instituted by the turnpike company against the town, to *reimburse to the company the expense of building the bridge*, are parts of the proof rejected, It is difficult to conceive of testimony more direct to the purpose, except the very singular declaratory vote of this company that *they had built the bridge*. This was not to be expected in their corporate acts ; and, of course, is not found. I will not urge this point further, as I am told it did not labour with the court at the circuit.

The principal grounds taken by the counsel for the complainant are, 1. That the statute under consideration did not relate to bridges erected when the statute was made, but to those thereafter to be erected ; 2. That the statute is *ex post facto*,(a) and therefore void ; 3. That the act incorporating the turnpike company exempted the company from building this bridge by its terms.

First, this construction is opposed to the letter of the act. That speaks in terms of bridges which *have been* built ; it speaks nowhere of bridges *to be built*. It is also incredible that the legislature should have made a law to explain acts of incorporation *hereafter* to be passed. One would believe, that they might safely leave such acts to be guarded sufficiently by their own terms and provisions.

Secondly, the statute is not *ex post facto*. That law only is *ex post facto*, according to the established use of those words, which makes penal an act already done, and which, when done, was not penal. That this statute is *retrospective* is not denied. Will not this court execute a law because it is retrospective ? To declare a law made by the supreme power of a state void, is always a delicate, though sometimes a necessary, office.

(a) The statute was passed in *May*, 1807; the turnpike company was incorporated in *October*, 1801.

The reasons, however, should be strong, and the case clear of all doubt, to warrant a court thus to array itself against the legislature. Many laws of this character are to be found in our statute book. I refer particularly to the following. Tit. 19. c. 1. Tit. 63. c. 2. s. 1. Tit. 97. c. 15. s. 1. Tit. 166. c. 1. It is presumed that many more may be found. It is presumed, also, that each state in the union has in like manner legislated. The stat. tit. 63. c. 2. is surely as retrospective as this. As to that law this objection was taken in a trial at *Litch-field* about two years ago, and by the court unanimously overruled.

Thirdly, the act incorporating the turnpike company did by its terms, exempt the company from building this bridge. It therefore *did designate*, and, of course, the statute in question does not operate on this case.

This ground, if tenable, to be sure, is fatal to us; and it is equally fatal to the statute. Let us examine it. By the provisions of our general laws relating to bridges, towns are obliged to build and keep in repair all necessary bridges. Tit. 29. s. 1. Whenever a road is established, and a bridge becomes necessary, the town of course is to erect and maintain the bridges necessary to accommodate such road. This being the law, the resolutions of the general assembly establishing turnpike roads and companies have given special directions, in some cases, as to the needful bridges, so as to save towns from the operation of the law. In the case before the court, the turnpike company was directed to build such bridges as towns had not been liable to *build*. The phraseology of the act is in this particular extremely awkward, and quite unintelligible. The courts, however, have said, that it meant that the turnpike company should build only such bridges as were *unnecessary ;* or, in other words, such as towns were *not liable to build ;* and towns were then liable to build all necessary bridges. The ambiguity of these terms, which were contained in several acts of incorporation, gave rise to numerous law-

suits, and these to the act under consideration, in which it is declared, that " in all cases where the incorporating act of any turnpike company does not designate what bridges on their road shall be built by them, and those which shall be built by the town where situated, and such company, in building and putting such road in repair, have built any bridge or bridges, *which otherwise might have belonged to the town where situated to have built*, it shall be conclusive evidence that such bridge originally belonged to such company to build and keep in repair." Now, the words of this statute certainly attach upon all such bridges as were not, by the act establishing the turnpike company, *fixed on the towns* where they are situated; but the act of incorporation is totally silent as to what bridges the *towns* shall build ; consequently, the statute attaches upon those bridges.

It is said, however, that when the act of incorporation directed what bridges the company should build, it, by irresistible implication, fixed the others on the towns. This is an attempt to be wiser than the law ; for it must be remembered, that the law speaks of such bridges " which otherwise might have belonged to the towns," &c. In short, the statute, in terms too plain to be misunderstood, says, that such bridges as are not by the acts of incorporation fixed upon the towns, or the turnpike companies, and of course might belong to the towns by the general law of the land, shall belong to the turnpike companies, if they originally built them. This bridge is of that nature, if any one ever was, or ever can be; and, of course, to say that it is not touched by the statute, is only to *make* law instead of *declaring* it.

It is, however, insisted, that the building of the bridge in question, to prove which the testimony was offered, was not such a building as the statute intended ; for it appears to have been built by the company *by compulsion*, and that, consequently, the testimony was inadmissible, being offered to prove a fact which would not fix

June, 1810.  the bridge on the company. I have reserved this for
the last point, because I am told that it was that on
WATER-      which the case turned in the superior court. The sta-
BURY        tute, when it speaks of a company's having built origi-
v.          nally a bridge on their road, it is said, must have intend-
CLARK.      ed a *voluntary* building; but here, it seems, the com-
pany built because their road was useless without it, and
the town would not build. It doubtless would be well in
some cases, that the courts should alter the law, and
make it what it ought to be. This, however, seems not
so exactly within their province. This statute, in une-
quivocal language, declares, that when a company have
built a bridge, the fact of building shall be *conclusive*
*evidence* of its being their duty to build. The argument
says, it shall be only presumptive evidence, to be rebut-
ted by proof that they built of necessity.

But there is another answer to this argument. The
testimony rejected went to show the fact that the com-
pany built. To that fact, surely, it was pertinent. If
the defendants were obliged to prove (as the argument
supposes) another fact, to wit, that the building was vo-
luntary, still they ought to have been permitted to show
the fact of building. After the court had excluded our
proof that the turnpike company built the bridge, *it*
*would seem rather unusual to have attempted to show that*
*it was built voluntarily.*

*N. Smith* and *Mitchell*, for the defendant in error. Two
general questions arise upon this record. 1. Did the
county court mistake the law in passing the decree, from
the evidence before them, that the town of *Waterbury*
was liable to repair the bridge?

2. Did they err in rejecting the evidence offered?

1. Whether the county court erred or not in the con-
struction of the charter, cannot be examined into upon
this writ of error. The only pleadings before the
court were, the complaint, the general issue, and the

decree. No exception has been taken to the sufficiency or regularity of either of them. As to the act of incorporation, *that* cannot be examined upon this bill of exceptions. The object of reciting it was to show the relevancy of the evidence offered, and rejected. For that purpose it was proper to introduce it; and it was admitted without objection. Having been introduced for this collateral purpose, it cannot now be made use of to bring in revision the construction put upon it by the court below. Let it be kept in mind that this writ of error is brought upon a *bill of exceptions*. The complaint of the plaintiffs in error is, that certain evidence which they offered, was rejected; not that a wrong construction was put upon that which was admitted without objection. A bill of exceptions bringing up the whole matter of controversy, after judgment upon the general issue, can be no foundation for a writ of error. This can only be done by a regular appeal, or by demurrer to evidence. It has been decided, that after verdict no bill of exceptions can be moved for. If the exception now insisted upon can be heard, this will be a bill of exceptions to the judgment in chief. *M'Donald et al.* v. *Fisher et al.*, *Kirby*, 339. *Wadsworth* v. *Sanford*, *Kirby*, 456.(1)

But admitting that the construction of this act of incorporation is open for examination here, we contend that by the terms of it this bridge was not to be built by the company. The controverted clause is, that *all bridges over such rivers and streams as towns have not heretofore been liable to build and maintain* [bridges over] shall be built and maintained by the company. By this the legislature mean to say—the road may strike streams, over which towns, by the construction put by

(1) The nature and use of a bill of exceptions are well explained in two late cases before the court of errors in the state of *New-York*. *Van Gordon* v. *Jackson*, 5 *Johns Rep.* 467. *Frier et al.* v. *Jackson*, 8 *Johns. Rep.* 495, 507, 508, 515, 516. R.

June, 1810.

WATER-
BURY
v.
CLARK.

the courts on the general law, have not been held liable to build bridges. The bridges over such streams shall be built by the company; but all others shall be built by the towns. The legislature certainly did not mean that the company should build *all* the bridges; if they had meant so, they could have said so in a few words. But it has not been shown, that *Mad River* is one of the streams over which the town of *Waterbury*, through which it passes, is excused from building a bridge.

2. Did the county court err in rejecting the evidence offered? The object of this evidence was to show, that the company in fact built the bridge; and thus to show, that by virtue of the stat. tit. 166. c. 2. s. 3. they were liable to repair it. This evidence was inadmissible on two grounds; 1. The facts, if proved, would not support the inference; 2. The proof was not legal in its nature.

The inference arises upon the statute just referred to. But we insist, that the court will regard that statute, so far as it affects the rights of this company, as a nullity. It is not on the ground that it is technically an *ex post facto* law, nor simply that it is a law having a retrospective operation, that we claim it to be void; but that it is a law impairing the obligation of a contract, the legislature themselves who made the law being a party to that contract. The legislature of this state made a grant to a number of individuals upon certain conditions. Those individuals accepted the grant, and performed the conditions. Can the legislature now add other terms, and thus vary the grant, without the consent of the grantees? Is a state less bound by its contracts than an individual? The principle of the law in question will warrant the legislature, at any time, to impose any terms that can be imagined. The company may be required to build a meeting-house, to support a minister, to endow a college, &c.

June, 1810.

WATER-
BURY
v.
CLARK.

But it is said, this law relates only to the *evidence* of the contract. This comes precisely to the same result. A contract can have no effect until it is proved. It is entered into with reference to the known and established rules of evidence. Whatever is done afterwards to vary the evidence of the contract, varies the effect of it. Suppose the legislature had said, in 1807, that the grant made to this company in 1801, should not be proved at all, or should be proved by impossible evidence; would not this in effect have destroyed the grant? Suppose the legislature had said, that the fact of the company's having made the road, should be conclusive evidence that they built the meeting-house in *Waterbury*, and of their liability to support the minister; would such a law be regarded in a court of justice? And what would be the difference in principle between the law supposed and that under consideration?

In the next place, admitting the fact of building to be material, the evidence offered was not proper *in its kind* to prove that fact. The offer was to prove *by parol*, what the directors had done. But the directors can do no act to affect the rights of the company, except in pursuance of a *vote* of the company. No such vote was produced. In *Leavenworth* v. *Kingsbury*, 2 *Day*, 323. it was decided, that the selectmen, notwithstanding the high powers given them by statute, could not make a settlement of the claims of the town which should be binding, without a vote of the town expressly authorizing them to make such settlement. The two votes of the company appointing agents to prosecute a suit against the town of *Waterbury*, do not show any authority to the directors, or to any one else, to build the bridge. But, at any rate, those votes do not prove a building within the meaning of the stat. tit. 166. c. 2. s. 3. because, if they prove that the company built the bridge at all, they prove equally that they built it *in*

*invitum,* claiming that it was the duty of the town to build it.

TRUMUBLL, J.   This case depends principally upon the construction of the statutes of this state respecting *bridges,* and the act of incorporation granted to the turnpike company.

The general statute concerning the erection of bridges, obliges " the inhabitants of the several towns to build and maintain in good repair all needful highways and bridges within their respective townships; unless it belong to any particular person or persons to maintain such bridge in any particular case." Tit. 29. s. 1. It was, of course, the duty of the town to build and maintain the bridge in question, unless by the grant of incorporation it was made the duty of the turnpike company to maintain it.

The clause in the grant which refers to this subject is this. [Here his honour read the first clause recited in the statement of the case.] The construction given by our courts on clauses of the same import in other grants has been, that the company are bound to build the bridges over all streams across which the town was not by the general law obliged to maintain necessary bridges; that where, by the elevation of the turnpike road, bridges become necessary over openings for the outlet of water, though none were necessary before; and also where the road passed over such small bridges as had been usually erected by the districts in the usual mode of work on highways, they must be built and maintained by the company.   But in case the stream be such that the town was before by law obliged to build all necessary bridges across it, if by the laying out of the turnpike road, a bridge becomes necessary in a new place over the stream, the town is still liable to build and maintain it; for the nature of the stream is what the law regards, and not the actual previous existence of a bridge at that particular place.   And this I hold to be the

true construction of the clause recited from this grant.
The bill of exceptions states that the then defendants
proved to the court, that no bridge had ever been built
at the place in question, nor any road laid out there be-
fore this act of incorporation was passed ; that a bridge
had been since built there ; and that the turnpike com-
pany had brought an action at law against the town of
*Waterbury* to recover the moneys, which the company
claimed to have expended in building the bridge. This is
conclusive evidence that the company had procured the
bridge to be built at their own expense; and that the
town of *Waterbury* had neglected or refused to build
it.   The votes of the company, and the parol evidence
tending to show that the company actually procured the
bridge to be built, which were, after this, offered to the
court, and not admitted, were immaterial and unneces-
sary, as being adduced only as farther testimony in re-
gard to a point which had been already, by conclusive
evidence, fully proved.

The statute passed in 1807, respecting the build-
ing of such bridges, enacts, " That in all cases
where the incorporating act of any turnpike company
does not designate what bridges on their road shall be
built by them, and what by the town where situated, and
such company, in building and putting such road in re-
pair, have built any bridge or bridges, which otherwise
might have belonged to the town where situated to have
built, it shall be conclusive evidence that such bridge
originally belonged to such company to build and keep
in repair." Tit. 166. c. 2. s. 3.  But in the present case,
the grant of incorporation designates what bridges shall
be built by the turnpike company, and what shall be built
by the town.  The clause already recited gives the rule
of discrimination, and makes it the duty of the company
to build all the bridges over rivers and streams, over
which towns had not heretofore been obliged by law

to build and maintain them; leaving others to be built by the towns as before. The statute, therefore, does not apply in this case. It was wholly immaterial who built the bridge; and all evidence to that point was irrelevant. The only question is, upon whom is the duty to build and maintain it imposed by law?

I hold the true construction of this statute, which alone will prevent it from operating as a law *ex post facto*, from taking away the legal rights of the turnpike companies, and abolishing grants made to them by the legislalature, to be this: that whenever any turnpike company shall have erected any bridges on their road, without making any claim against the town whose duty it might have been to build and maintain them, the act of building them shall be considered as a practical construction of their own grant, by the company themselves, and a waiver of all claim against the town.

In this view the present case does not come within the purview of the statute: for, it appears by the suit instituted by the company against the town of *Waterbury*, that they have ever kept up their claim against the town.

For these reasons, I am of opinion that the judgment of the superior court is not erroneous.

In this opinion MITCHELL, Ch. J. REEVE, EDMOND, BRAINERD, BALDWIN, and J. C. SMITH, Js. severally concurred.

N. SMITH, J. I am of the same opinion. No vote is produced authorizing the directors to build the bridge in question; and their authority to build the road did not empower them to build a bridge which was no part of the road, and which the company was not by law bound to build. Any thing which the directors have said or done on the subject of this bridge, therefore, being unauthorized, is clearly inadmissible. No other vote is produced authorizing any other person to build this bridge; and a corporation can speak only by their

vote. Of course, the testimony of *William Leavenworth* was inadmissible.

The two votes which were offered, merely provide for prosecuting a suit against the town of *Waterbury* to recover moneys expended in building the bridge in question ; and the only implication from them is, that the company built the bridge for and on account of the town of *Waterbury*, either at their request, or under such necessity as in their opinion rendered the town liable without request.

Was this a building by the company within the meaning of the statute tit. 166. c. 2. s. 3. ? It was well known to the legislature, that in the origin of turnpike companies, grants had been made in general terms, and the companies had accepted of their grants under a belief that they were bound to build the bridges; and, in making the road, had built the bridges as a matter of course. But after some adjudications rendering towns liable to build them in similar circumstances, they were attempting to depart from their own construction, and throw off the burden of building the bridges on the towns. This was supposed to be unjust; and to avoid this evil the law in question was made. The law applies, in its terms, to those cases only, where the company, *in making the road*, had made any bridge or bridges; and the obvious intent of the legislature is, to apply its provisions to those cases where the company make bridges *as their own*, in making the road, and thereby assume them as theirs.

Such being the manifest intent of the legislature, it is clear to my mind that these votes do not prove a building within the meaning of the law. It was argued at the bar, that at least these votes would prove a building in fact by the company ; and they might have had other evidence to show that they did it on their own account. But they must be taken as they are ; and they speak no other language, and prove no other building, than one

June, 1810.

WATER-
BURY
v.
CLARK.

June, 1810.

WATER-
BURY
v.
CLARK.

for and in behalf of the town of *Waterbury*. They ap-
pear, therefore, *primâ facie* to prove nothing towards
establishing the fact of building by the company on their
own account.   If any other evidence in the power of the
party would have  rendered them relevant, it ought to
have been  stated, and offered  in connection with them.
No  other evidence, however, can be  imagined, which
would affect the admissibility of these votes, unless it be
some other  vote of the corporation;  and if any such ex-
isted,  they surely  ought to have been all offered toge-
ther.

SWIFT, J.    The first question is,  whether the clause
in the act incorporating the turnpike company, that they
shall  build bridges which towns are not  liable  to build,
designates  what  bridges  shall be built by the company,
and what by the towns.

   The  general law  provides,  that towns shall  build
bridges across rivers in public highways ;  and it has been
decided by the superior court, that they  are obliged  by
the general law  to build bridges over rivers on turnpike
roads, unless the turnpike companies  are expressly re-
quired and bound to do it.   It is by the general law only that
towns are obliged to build bridges ;  and there is no law,
either general or  special, requiring  any other  corpora-
tion, or any person to  do it, unless in some of the acts in-
corporating turnpike companies. It is, then, apparently a
palpable absurdity for  the act of incorporation to require
the turnpike  company to build bridges which towns are
not liable to build, when towns are liable to  build all the
bridges. It is a void provision in the act, without effect, and
leaves the duty of building bridges to be the same as if no
such  clause was inserted :  and towns would continue to
be under the obligation to build all  bridges.   If nothing,
however, was said in the act of incorporation respecting
the bridges, it would not be pretended that there  was a
designation  by the act who should  build them :  if what

is said is a mere nullity, that cannot amount to a designation.

But there must be some object intended to have been answered by such a clause in an act incorporating a turnpike company, and it has been decided by the superior court, in the construction of such a clause, that by bridges which towns are not liable to build is meant small bridges usually built by highway districts. Whether this construction be correct or not, is immaterial in considering the present question; for admitting it to be correct, the clause will not then contain a designation by whom the bridges are to be built. There is no statute requiring highway districts to build bridges of any description: there is no general usage or custom by which it can be determined what are the kind of bridges they shall build: no standard can be given by which it can be ascertained. This uncertain rule cannot be deemed a designation, the plain import of which is a *pointing out*, and *describing with certainty*.

Indeed, this seems to be the only want of designation which the statute probably contemplated. If nothing was said about bridges, it of course devolved upon the towns to build them. If the bridges were specified, or the towns, or turnpike companies, were required to build them all, then there could be no question : but when a clause like the present was inserted, then the uncertainty of the duty to build might lead turnpike companies to build where they were not bound to do it, and it is the manifest object of the statute to make the act of building conclusive evidence of the obligation. A contrary construction will in effect repeal the statute ; for I doubt whether there is a single case on which it can operate.

If the bridge in question comes within the statute, as not being designated in the act of incorporation, then it was competent for the town to prove it was built by the turnpike company, in order to show their liability to keep

it in repair.   That the proof offered was admissible to this point there can be no doubt.

It is an unquestionable rule, that testimony which is relevant, which conduces to prove any fact in the case, is admissible, though it may not prove the whole issue. A party cannot prove his whole case at once.   Courts can never know beforehand, that he will not adduce proof to every point in issue; and it is the right of the party to call his witnesses in such order as he shall deem most expedient.

That the proof offered, and which was rejected by the county court, was relevant, and conduced to prove the fact that the turnpike company built the bridge, I apprehend will not now be questioned.   To say that a vote of the company appointing an agent to prosecute the town for the reimbursement of the money expended by the company in building the bridge, is not an acknowledgment that they built the bridge, is to deny the effect of the plainest testimony.   It does not appear from this vote, that the company built the bridge at the request of the town. or with the sole view to make them chargeable.   For aught that appears on the face of the vote, they built it supposing they were liable, and then afterwards brought an action against the town to recover back the money.

I am, therefore, of opinion, that the judgment ought to be reversed.

Judgment affirmed.