EDWARD A. TODD AND OTHERS vs. HENRY N. OVIATT.

New Haven Co., June T., 1889. ANDREWS, C. J., CARPENTER, PARDEE, LOOMIS and BEARDSLEY, Js.

A husband cannot be tenant by the curtesy in lands in which his wife had only a remainder expectant on a prior estate which did not determine during the coverture.

[Argued June 13th—decided October 30th, 1889.]

ACTION to recover possession of a dwelling house and lot;

brought to the Superior Court in New Haven County. The defendant filed the following answer:—

The premises described in said complaint are part of the estate of Elam Hull, deceased. Said Hull died in 1863, leaving a will, which was duly probated in the probate district of New Haven, and his estate was administered and settled under its provisions. Said will, among other matters, contained the following devise "I devise to my daughter, Louisa Oviatt, wife of Henry N. Oviatt, and to her heirs forever, the dwelling house where I now live, with the lot on which it stands and belonging to it, subject, however, to the use and improvement thereof by my wife, Nancy Hull, during her natural life." Said Louisa died May 29th, 1864, leaving two children, the issue of her marriage with the defendant, namely, Ida, wife of the plaintiff Todd, born March 13th, 1858, and Walter, born November 5th, 1859, both plaintiffs in this suit. Afterwards said Nancy Hull died, and on her death the defendant entered into possession of said premises, claiming title thereto as tenant by the curtesy, by virtue of his marriage with said Louisa, and is now in possession as tenant by the curtesy, and claims good right to continue said occupancy, taking the rents and profits to himself during his lifetime.

The plaintiff filed the following demurrer to the answer:—

The plaintiff demurs to the defendant's answer, because it appears therein that said Louisa N. Oviatt, who was, under the will of said Elam Hull, entitled to the remainder in the above named premises, died before said Nancy Hull, who was under said will tenant for life of said premises, and that therefore said Henry N. Oviatt is not entitled to an estate by the curtesy in said premises.

The case was reserved upon the demurrer for the advice of this court.

*W. K. Townsend* and *G. D. Watrous,* in support of the demurrer.

1. It must be conceded that by the common law of England and by the decisions of every state in which the ques-

tion has arisen, there can be no curtesy in a reversion or remainder, expectant upon a prior estate for life, unless the life estate ends during the coverture. We find no decision whatever to the contrary. 2 Bla. Com., 127; Tiedman on Real Prop., § 107; *Stoddard* v. *Gibbs*, 1 Sumn., 263; *Ferguson* v. *Tweedy*, 43 N. York, 543; *Shores* v. *Carley*, 8 Allen, 425; *Webster* v. *Ellsworth*, 147 Mass., 602; *Orford* v. *Benton*, 36 N. Hamp., 395; *Watkins* v. *Thornton*, 11 Ohio St., 367; *Hitner* v. *Ege*, 23 Penn. St., 305; *Reed* v. *Reed*, 3 Head, 491; *Stewart* v. *Barclay*, 2 Bush, 550; *Mackey* v. *Proctor*, 12 B. Monr., 433; *Redus* v. *Hayden*, 43 Miss., 614; *Baker* v. *Flourney*, 58 Ala., 650; 4 Am. & Eng. Encyc. of Law, 961.

2. The common law has not been abrogated by statute in this state. There have been no statute provisions on the subject until the act of 1877 which abolished estate by curtesy.

3. Nor has it been abrogated by judicial decision. The defendant bases his claim entirely on the early cases of *Bush* v. *Bradley*, 4 Day, 298, and *Kline* v. *Beebe*, 6 Conn., 494. Neither of these cases resembles ours in its facts, nor was there any question raised as to the right to curtesy in a reversion or remainder. In the latter case no such question could arise on the facts, and the only reference to curtesy is on page 499, where the court say that " a husband may be tenant by the curtesy of lands, although his wife was not *actually seised* during the coverture;" while in the former case the only point decided, material to this case, was that a man might be tenant by the curtesy of lands of which his wife never had actual possession, but only a right to immediate possession; never actual seisin, but only a constructive seisin, or, as some authorities say, a potential seisin. Neither of these positions conflicts with our claim. The text books, commenting on these cases, so construe them. 1 Sharswood's Blackstone, note, p. 488; 1 Washb. R. Prop., 5th ed., 182.

4. So far as the points in the Connecticut cases are concerned, our law is in perfect accord with that of Ohio, Tennessee and Pennsylvania. In each of these a constructive or potential seisin of the wife is sufficient to give curtesy;

in each has the maxim *seisina facit stipitem* been abolished; and yet each has held that there can be no curtesy in a reversion or remainder, expectant upon a prior undetermined freehold. *Borland's Lessee* v. *Marshall,* 2 Ohio St., 308; *Watkins* v. *Thornton,* 11 id., 367; *Guyon* v. *Anderson,* 8 Humph., 298; *Prater* v. *Hoover,* 1 Coldw., 544; *Reed* v. *Reed,* 3 Head, 491; *Stoolfoos* v. *Jenkins,* 8 Serg. & R., 167; *Chew* v. *Comrs. of Southwark,* 5 Rawle, 160; *Buchanan* v. *Duncan,* 40 Penn. St., 82. The old rule of descent, *seisina facit stipitem,* is now in force nowhere, not even in England. 3 Washb. R. Prop., 5th ed., 14; *Paterson* v. *Mills,* 19 L. Jour., Cha., 310.

5. Reasoning from the analogous institution of dower, the defendant's position cannot be sustained. Lord COKE speaks of dower as "highly favored in law," and it is held by a long line of decisions in England and this country that there can be no dower in an estate in remainder or reversion. 1 Washb. R. Prop., 154; 4 Kent Com., 39; *Moody* v. *King,* 2 Bing., 447; *Adams* v. *Beekman,* 1 Paige, 631; *Durando* v. *Durando,* 23 N. York, 331; *Brooks* v. *Everett,* 13 Allen, 457; *Medley* v. *Medley,* 27 Gratt., 568; 5 Am. & Eng. Encyc. of Law, 893.

6. There is nothing in the institution of estates by curtesy that entitles them to favor. Dower has a moral foundation; not so curtesy. *Banks* v. *Sutton,* 2 P. Wms., 700, 708; 2 Bla. Com., 127; HOSMER, C. J., in *Heath* v. *White,* 5 Conn., 228. The whole policy of our law is against extending the husband's rights in the property of the wife.

*C. R. Ingersoll* and *L. E. Munson, contra.*

1. Mrs. Oviatt was seised of the land in question during her life. She took the fee of the property subject to the life estate of her mother. The estate was a vested remainder, alienable, devisable, descendible, with all the incidents of any other kind of present interest in real property. 1 Swift's Dig., 96. And she was "seised" of this estate; constructively by the common law of England, actually by the common law of Connecticut. Lord COKE might deny to

her actual seisin, because, during the life tenancy, she could
not make actual entry upon the land and there receive the
twig and turf—the feudal method of publishing title, for
which, in Connecticut, has been substituted a delivery and
record of the deed or probate of the will.  1 Swift's System,
313.   But even in COKE's time, and in England, she would
have been properly described as "seised of the reversion,"
because entitled to it; the livery made to the tenant of the
freehold constructively enuring to the benefit of the rever-
sion or remainder.   "A man may say of a reversion depen-
dent upon an estate for life that he was seised as of fee."   1
Plowd., 191.   See also 1 Washb. R. Prop., 5th ed., side p. 37 ;
3 id., side p. 483 ; 1 Swift's Dig., 96 ; *Cook* v. *Hammond*, 4
Mason, 467.   But in Connecticut, ownership, vested title,
present right of property, has always meant " seisin," this
ownership being publicly shown by the record title.   This
was declared to be the common law of Connecticut in a not-
able case.   *Hillhouse* v. *Chester*, 3 Day, 166.   And see 1
Swift's System, 313 ; *Bryan* v. *Bradley*, 16 Conn., 474.   In
some of the states the distinction has been maintained long
after any reason for it has ceased to exist.   But in the deci-
sions of those states Mrs. Oviatt would be regarded as seised
in law, though not in deed.   Even in *Stoddard* v. *Gibbs*, 1
Sumn., 263, decided in 1832, the leading case to which all
the decisions in this country in support of the plaintiffs'
present contention go back, it is distinctly conceded that she
would by the ancient common law of England be thus seised
of her remainder.   And see particularly *Vanderheyden* v.
*Crandall*, 2 Denio, 9.   When the feudal system was in full
vigor in England seisin, it is true, meant possession.   But pos-
session at that time meant ownership or title.   No freehold
estate was then possible without the ceremony of feudal in-
vestiture, the main purpose of which was to publicly evidence
the ownership or title.   2 Bla. Com., 209.   But when the
feudal system broke up, and the alienation of land gradually
became freer, new estates in land became possible and new
methods of publicly evidencing the ownership of these new
estates became necessary.   Out of this arose the idea of *con-*

*structive seisin,* which was simply an effort to harmonize the old and new conditions of society and its laws as far as possible. Both phrases, "corporal seisin" and "constructive seisin," had the same practical meaning, and that meaning was ownership. In the one case the ownership was evidenced by entry and possession. In the other by acts more in consonance with the new state of society. But this ownership was complete without right of entry upon the land. *Jenkins* v. *Fahey,* 73 N. York, 363. An entry upon land is no more necessary in these days (even where the English common law has been adopted) to a "seisin" of the land, than are the other feudal ceremonies with which actual entry was associated. And clearly if entry is not so necessary there can be no reason why a right of entry should be. When it is remembered that it is not many years since livery of seisin was formally abolished in England, it is perhaps not strange that courts in some of our states that had adopted the English common law should have been slow to recognize the incongruity of feudal forms with nineteenth century property rights. But in this case of seisin such recognition has been very surely going on until "seisin now means ownership." Anderson's Law Dict., *Seisin.* Even in Lord MANSFIELD's time he said, in *Taylor* v. *Horde,* 1 Burr., 108, that the great changes in tenures "have left us little but names of feoffment, seisin, tenure and freeholder, without any precise knowledge of the thing originally signified by these sounds." But the plaintiffs ask—Has the common law been abrogated in Connecticut by judicial decision? The answer is, that the English common law as a whole has never been in force in Connecticut *proprio vigore.* *Wilfred* v. *Grant,* Kirby, 117. Such parts of it as our judiciary has thought suited to our circumstances have been recognized by judicial decision and have thus become part of the common law of Connecticut. But no part of it which required corporal seisin as an evidence of ownership has ever been adopted here. On the contrary, ownership with us has always been seisin. There never was a time in Connecticut when a person having a good title to land or to any estate in land, was not well

" seised " of that land or that estate.    2 Swift's System, 68.
His covenant of seisin could only be broken by a failure in
that respect.

2. Mrs. Oviatt being seised of the property, either actu-
ally or constructively, during her life, and having issue by
her husband, he became a tenant by the curtesy initiate on
such seisin and a tenant by the curtesy consummate on
her death.    It may be conceded that in COKE's time a ten-
ancy by the curtesy required the actual seisin of the wife,
as distinguished from constructive seisin, for its initiation.
But there was a good reason for it.    Without actual seisin
in the mother the child could not inherit from her.    *Seisina
facit stipitem* was the maxim of the common law.    And the
husband's tenancy was because of the child's interest in the
land.    2 Bla. Com., 127 ; 1 Greenl. Cruise, tit. 5, ch. 1, § 23 ;
2 id., tit. 29, ch. 4.    But this rule of the ancient common
law was abolished in England by statute in 1834, and it is
probably not recognized now in any of our states.    4 Kent's
Com., 5th ed., 29.    But in Connecticut it was never a part
of our common law.    Ownership—present right of property
—has always been sufficient to make a stock of inheritance.
And since *Hillhouse* v. *Chester*, 3 Day, 166, the rule has had
no force here.    And therefore, in *Bush* v. *Bradley*, 4 Day,
298, it was held, as the logical necessity of *Hillhouse* v. *Ches-
ter*, that seisin of the wife in the sense of the ancient com-
mon law was not necessary to constitute a tenancy by the
curtesy in Connecticut, and that ownership, or present right
of property, that is, seisin in the sense of Connecticut com-
mon law, was sufficient.    And in *Kline* v. *Beebe*, 6 Conn.,
494, this decision was followed, and applied to facts very
analogous to, if not identical with, those of the present case.
The wife's estate was a vested remainder, dependent upon
a life estate.    Whether the wife survived her mother, the
life tenant, or not, does not very clearly appear.    The court
evidently regarded that fact as immaterial.    It was enough
that the wife was seised according to Connecticut law, that
is, owned the interest vested in her, at the time the tenancy
by the curtesy was initiated by the existence of issue.    " On

the birth of issue his title commences, and the law will not defeat it by a subsequent event." 1 Swift's Dig., 84.

3. The plaintiffs are not helped by the analogy of dower. On the contrary, our court has applied the Connecticut rule of seisin to the case of dower, and held the wife entitled to dower as the husband is entitled to curtesy in an equity of redemption, although, according to English law, there can be no " seisin " of such an estate in the mortgagor, the right of possession being clearly in the mortgagee. But by Connecticut law the mortgagor has " virtual seisin," because he has virtual ownership. *Fish* v. *Fish*, 1 Conn., 559. The cases of common law dower cited simply follow the English common law, making the wife dowable of lands of which the husband had actual seisin during the coverture. But we have never had common law dower in Connecticut. Nor has actual seisin ever been required in Connecticut dower. Legal title alone is sufficient. 1 Swift's Dig., 85.

LOOMIS, J. The complaint in this action demands the possession of a certain house and lot in the city of New Haven. The answer of the defendant, which was demurred to by the plaintiffs, sets forth the facts that control the case.

Elam Hull of New Haven died in 1863, leaving a valid will, which gave to his widow, Nancy Hull, the real estate described in the complaint, during her natural life, with remainder to his daughter, Louisa Oviatt, then wife of the defendant Henry N. Oviatt, and to her heirs forever. Mrs. Oviatt, the devisee of the remainder, died in 1864 before her mother, having had two children of her marriage with the defendant, who are the plaintiffs in this action and her heirs at law. Mrs. Hull, the devisee of the life estate in the demanded premises, died in 1869.

The gist of the answer is, that the defendant, as surviving husband of Mrs. Oviatt, is entitled to the possession of the premises in question as tenant by the curtesy; and the point of the demurrer is that, as Mrs. Oviatt died before the expiration of the life-tenancy of her mother, she never had even a right to the possession, and consequently there was no legal

seisin in the wife to furnish one of the indispensable requisites of title by the curtesy in the surviving husband.

The sole question for discussion as presented by the pleadings is—May a husband be tenant by the curtesy in lands of which his wife had only a remainder, expectant on a prior estate which did not determine during coverture ?

The four requisites to make a tenant by the curtesy, as stated in Blackstone's Commentaries, and in all the treatises on the common law that include this subject, are marriage, seisin of the wife, birth of issue capable of inheriting, and the death of the wife.   No one of these requisites up to the present time has ever been dispensed with by the courts of England or the United States, unless pursuant to some statutory enactment.

Some disparity however exists in the definition or application given by different courts to the word "seisin."   Blackstone (vol. 2, p. 127), after stating the requisites as above, adds :—" The seisin of the wife must be an actual seisin or possession of the lands ; not a bare right to possess, which is a seisin in law, but an actual possession, which is a seisin in deed."   This is still the general rule ; but certain exceptions have been recognized and adopted by several courts. The possession of a lessee under a lease for years reserving rent, is regarded as an actual seisin in the wife as reversioner, so as to entitle the husband to an estate as tenant by the curtesy, although he never received or demanded rent during the life of the wife.   *Ellsworth* v. *Cook,* 8 Paige, 646 ; *De Grey* v. *Richardson,* 3 Atk., 469 ; *Watts* v. *Bull,* 1 P. Wms., 108.

Wild uncultivated lands may be constructively in the wife's possession unless in the adverse possession of another.   *Pierce* v. *Wanett,* 10 Ired. Law, 446 ; *Davis* v. *Mason,* 1 Pet., 507 ; *Clay* v. *White,* 1 Munf., 162.   Recovery in ejectment has been held equivalent to actual entry.   And where the wife takes under a deed actual entry is not necessary. *Jackson* v. *Johnson,* 5 Cowen, 74, 97 ; *Adair* v. *Lott,* 3 Hill, 182, 186.

And in the states of Connecticut, Pennsylvania, Ohio,

Mississippi and Tennessee, a right of entry on the part of the wife would be a sufficient seisin, although the premises were in the adverse possession of another. *Stoolfoos* v. *Jenkins*, 8 Serg. & Rawle, 175 ; *Borland* v. *Marshall*, 2 Ohio St., 308 ; *Redus* v. *Hayden*, 43 Miss., 624 ; *Bush* v. *Bradley*, 4 Day, 209 ; 1 Washb. Real Prop., 3d ed., top page 160.

But this is substantially the extent of the modifications of the common law idea of seisin of the wife as applicable to the husband's right to an estate by the curtesy. And there is on the other hand a remarkable consensus of judicial opinion in the courts of England and the United States, and among all the text-writers upon the subject, to the effect that if there be an outstanding estate for life the husband cannot be the tenant by the curtesy of the wife's estate in reversion or remainder unless the particular estate be ended during coverture. 1 Bishop on the Law of Married Women, § 489 ; 1 Washb. Real Prop., 4th ed., top p. 175, § 33 ; Tyler on Infancy & Coverture, 2d ed., § 284 ; 4 Kent's Com., 59 ; *Moody* v. *King*, 2 Bing., 447 ; *Ferguson* v. *Tweedy*, 43 N. York, 543 ; *Shores* v. *Carley*, 8 Allen, 425 ; *Brooks* v. *Everett*, 13 id., 457 ; *Fisk* v. *Eastman*, 5 N. Hamp., 240 ; *Orford* v. *Benton*, 36 id., 395 ; *Hitner* v. *Ege*, 23 Penn. St., 305 ; *Watkins* v. *Thornton*, 11 Ohio St., 367 ; *Stoddard* v. *Gibbs*, 1 Sumn., 263 ; *Medley* v. *Medley*, 27 Gratt., 568 ; *Adams* v. *Logan*, 6 Monr., 175 ; *Planters' Bank* v. *Davis*, 31 Ala., 626 ; *Malone* v. *McLaurin*, 40 Miss., 161 ; *Reed* v. *Reed*, 3 Head, 461 ; 4 Am. & Eng. Encyc. of Law, 961, and cases there cited.

The proposition established by such a weight of authority, being identical with the question in this case, ought to control, unless it is found to contravene some peculiar policy, system or precedent, already established in this state, or unless it is productive of injustice or great inconvenience.

And here the counsel for the defendant earnestly contend that the proposition is in direct contravention of our peculiar system and opposed to some early decisions of this court. They rightfully claim that credit is due the courts of this state for repudiating at an early day one of the fruits of the feudal system, which has come down to us preserved in the

common law maxim, " *Non jus sed seisina facit stipitem;* "
it is not the right but seisin that makes the stock or root.
But we cannot yield a like hearty assent to the claim that,
because we have repudiated mere seisin as the stock of in-
heritance in distributing the estate of a deceased person
among his heirs, a logical necessity must compel this court
to cast upon a surviving husband a tenancy by the curtesy
in lands which his wife could by no possibility have enjoyed
during the existence of the marriage relation.

The position of the husband in relation to property be-
longing to his wife and to her children is very different from
that between an intestate and his natural heirs in reference
to the estate to be distributed. It does violence to the dic-
tates of natural affection and our sense of justice to see a
purely artificial and arbitrary rule erected between an intes-
tate and the natural objects of his bounty. The very maxim
that embodies the rule contains an implied confession that
it is wrong, for the language is, " not *right*, but seisin."
But on the other hand, to adopt the language of HOSMER,
C. J., in *Heath* v. *White*, 5 Conn., 235, " the system of ten-
ure by the curtesy is at least pretty artificial, and is what it
is because *ita lex scripta est.*"

Its origin is not very well known, nor is there any princi-
ple to which by common consent it is referable. But the
counsel for the defendant contend that the reason for re-
quiring actual seisin in the wife is to be found in the fact
that the common law confined inheritance to the stock of
actual seisin. If it clearly appeared that this was the sole
reason the defendant would be entitled to the benefit of the
rule " that when the reason of any particular law ceases, so
does the law itself."

The citation from 2 Blackstone's Commentaries, 128, and
from 1 Greenleaf's Cruise, tit. *Curtesy*, sec. 23, to the effect
that the rule as to seisin in curtesy probably arose from the
rule as to inheritance, at first impressed us as furnishing
strong support for this position. But on turning to Wil-
liams's able treatise on Real Property, 4th edition, appendix
E, star pages 491 to 502, we found an exhaustive discussion

Todd *v.* Oviatt.

of this question in which he clearly shows by many citations from Coke, Littleton and Blackstone, as well as by other reasons, that this supposition is not true; and his conclusion is " that the reason why an actual seisin was required to entitle the husband to curtesy was that his wife may not suffer by his neglect to take possession of her lands, and in order to induce him to do so the law allowed him curtesy of all lands of which an actual seisin had been obtained, but refused him his curtesy out of such lands as he had taken no pains to obtain possession of."

In 2 Blackstone's Commentaries, star page 131, under the head of dower, it is said: " A seisin in law of the husband will be as effectual as a seisin in deed, in order to render the wife dowable; for it is not in the wife's power to bring the husband's title to an actual seisin, as it is in the husband's power to do with regard to the wife's lands; which is one reason why he shall not be tenant by the curtesy but of such lands whereof the wife, or he himself in her right, was actually seised in deed." Lord COKE also has a statement to the same effect.

Bishop, in his treatise on the " Law of Married Women," argues that curtesy does not depend solely on the right of issue to inherit, but upon the nature of the wife's estate as well—that it was one that might have been made to yield sustenance to the married parties during coverture. After an able review of all the leading authorities, he says (§ 499): " The result of this reasoning seems to be that, while the possibility of the issue inheriting is essential to curtesy, actual possession of the hereditaments by the wife is also essential; curtesy not arising except where the two concur. In this respect the analogy of curtesy to dower is complete. If we suppose that dower was given to assist the widow in her own maintenance and curtesy to assist the husband in maintaining the children, the analogy ought to be complete; and the law is not unreasonable in declining to give, after death, the use of what was not in use during life."

These considerations would seem to be ample to show that the abolition of the common law maxim requiring

seisin for the stock of inheritance does not logically deter-
mine the right of the husband to curtesy in a remainder
which could not by possibility have vested in possession
during coverture.   And finally, the fact that nearly or quite
all the states in this country, and England also, have abol-
ished the maxim referred to, and now distribute the estates
of intestates among the heirs without any reference or re-
gard to the actual seisin of the ancestors, and yet at the
same time hold firmly to the doctrine that either actual or
legal seisin is an indispensable requisite to title by the cur-
tesy, affords the strongest presumption against the correct-
ness of the defendant's position.

But all this discussion will be in vain if the precise ques-
tion under consideration has already been decided by this
court in the way counsel for the defendant contend.   Only
two cases are relied upon in support of this contention—
*Bush* v. *Bradley*, 4 Day, 298, and *Kline* v. *Beebe*, 6 Conn.,
494.

In the first of these cases the facts, so far as they relate
to curtesy, were as follows: Robert Woodhouse died actu-
ally seised of the premises in 1775.   On his death they
descended to Mary, his only child, who married James Gold-
ear in 1794.   She died in 1807, her husband surviving her,
having had children who could have inherited the premises.
Neither Goldear nor his wife ever had actual possession of
them during coverture, but the defendant had been in pos-
session adversely for more than twenty years.   The ques-
tion was whether Goldear was tenant by the curtesy.   There
is no doubt that the court, by a majority of its members,
held that actual seisin was not necessary to make the hus-
band tenant by the curtesy.   But whether or not the court
intended to hold constructive seisin or a seisin in law to be
necessary is left in some doubt.   There existed a right dur-
ing coverture to recover the possession, so that the case was
in fact one of constructive seisin.   If we except a single
passage at the close of the opinion of the majority of the court,
given by REEVE, J., the reasoning is strictly confined to the
precise case before the court, where there was a constructive

Todd *v.* Oviatt.

possession.   It is as follows: " We have always considered ownership of real property sufficient to maintain an action of trespass against every intruder; but by the English law *actual possession by entry* is necessary.   We have always considered ownership as giving a right to possession of real property, as much so as ownership of personal property. Ownership in the one case draws after it possession as much as in the other case; and whenever a right of possession is lost, all title and ownership are lost. * * *   The English law distinguishes betwixt a *right of possession* and a *right of property;* but our law does not.   Wherever there is a right to real property, there is of course a right of possession." The concluding interrogatory—why seisin should be thought necessary to curtesy, since it had been dispensed with in cases of descent, may have been intended, notwithstanding its unlimited terms, merely to furnish an argument for dispensing with actual seisin only; otherwise it would seem impossible to explain why so much stress had been placed in all the previous reasoning on the right to take possession as the controlling fact.

But in the argument for the defendant our attention was repeatedly called to the word "ownership" as constituting seisin.   The meaning however is explained, we think, in the same opinion, as involving not abstract title alone, but also the right of possession; and it is explained again in *Chalker* v. *Chalker*, 1 Conn., 87, 88.   TRUMBULL, J., after citing a passage from the opinion in *Bush* v. *Bradley*, said the word "ownership" was there used in its strict legal sense, and added:—"It is a mistake to suppose that our courts have arbitrarily disregarded the rules of the common law, for I hold that in this state we have adhered to them as strictly in all these points as has been done in England, and that every deviation is either directly enacted in express words, or clearly deducible from the legal construction of our own statutes;" and it was held in that case that an actual entry was necessary to revest a freehold estate forfeited for breach of a condition in a deed.   In *Shelton* v. *Alcox*, 11 Conn., 249, WILLIAMS, C. J., in giving the opinion of the

court said:—" When we say a man has the title to a farm, we mean he is the owner of it, and *vice versâ.* And this corresponds with the legal meaning. He who has the possession, the right of possession, and the right of property, has a perfect title."

In *Kline* v. *Beebe, supra,* the land in question had been devised to Deborah Bolles for life or during widowhood, with remainder to her daughter Patty, who married the plaintiff in 1795. Four years before her marriage, when she was only eighteen years of age, she deeded the property to the defendant's grantor. She arrived at full age more than a year before her marriage, and died in 1815, having had children by the plaintiff. Her mother Deborah also died during the same year, but whether it was before or after the death of Patty the record nowhere discloses. The question of curtesy was not brought up for review at all by the motion for a new trial, if we may judge by the brief and argument in support of the motion, for there is no hint or allusion to the question at all. Moreover the record expressly says—" The plaintiff had children by Patty, and was *without question* tenant by the curtesy of lands whereof she was seised during the coverture." There was no discussion or reasoning by the court except upon the three points made as to the validity of the deed given by Patty when she was under age, in respect to which the court determined, 1st, that the deed was not void by statute as she was not under the government of a parent or guardian; 2d, that at common law the deed was not void but voidable only; and 3, that after the arrival of the grantor at full age it was ratified and affirmed. The only allusion to curtesy consisted of a preliminary remark by HOSMER, C. J., before he came to the questions for review, as follows: " The title of the plaintiff as tenant by the curtesy is not defective for want of actual seisin in his wife. A husband in this state may be tenant by the curtesy of lands, although his wife was not actually seised during the coverture. *Bush* v. *Bradley,* 4 Day, 298." This at most merely affirms the former case, or, if it does any more, it clears up that decision by

showing by implication that a seisin in law is the seisin required, the term "actual seisin" being almost invariably used in contradistinction to seisin in law. It is probable that the court made this statement because counsel for the defendant had said—"The plaintiff is not entitled to recover as tenant by the curtesy, his wife not having had possession *in fact* of the land during coverture. Further, as her deed was only voidable, and it was not avoided during her life, she had no ownership or right of possession during the coverture, within the principle of *Bush* v. *Bradley*, 4 Day, 293."

This claim strikes us as very significant, for it shows that the very eminent counsel who made the point understood that the principle of *Bush* v. *Bradley* was, that a right of possession made a sufficient seisin as distinguished from "possession in fact," and it is also implied that counsel believed the life-estate of Deborah had determined during the coverture, for the only reason given why there was no right of possession in Patty was, that she had given a deed of all her rights which vested all her interest in the grantee, until at least the deed was avoided, which was never done. If the estate for life had not determined counsel would surely, as it seems to us, have mentioned that fact, having their minds directed specifically to the point whether there was a right of possession during coverture. Counsel for defendant in the case at bar claimed that, in the dissenting opinion of PETERS, J., a suggestion was made indicating that the mother survived Patty. The remark was—"The grantor was *sui juris* one year only before she died, during the existence of the particular estate and when she had no right of entry." But this manifestly refers to the year 1794–5, when she was of full age and before her marriage. HOSMER, C. J., in considering the question whether Patty had ever affirmed her deed, on page 505 states the same fact, that she "arrived at full age more than a year before her intermarriage with the plaintiff and about three years after the deed was executed."

It seems to us that this case cannot be regarded as an au-

thority supporting the contention of the defendant.    At the
most and without discussion it simply affirms the proposi-
tion that *actual seisin* in the wife is not essential to curtesy
in this state.

We must then recur to the question—what was decided
in *Bush* v. *Bradley?*  It seems to us that the construction
claimed by the defendant's counsel ought manifestly to be
the true one, to justify this court in taking a position utterly
opposed to the settled law of all other jurisdictions.   In-
stead of being manifest, it must be conceded to be very
doubtful whether the court intended to go, or did go, be-
yond dispensing with the necessity of seisin in fact, and sub-
stituting a right to possession, or seisin in law.   If not so in
doubt how does it happen that on the one hand such able
and accurate text writers as Washburn, Bishop, Sharswood
and Williams, as well as others, restrict the decision to the
above point; while on the other hand Chancellor KENT and
some others seem to give the decision larger scope.

Referring to our own text writers, we find it stated in
1 Swift's Digest, top page 87, that " in this state it has been
decided that a legal right to lands without actual seisin or
possession is sufficient to entitle the husband to curtesy."
This fails to clear up the doubt, although it is consistent
with the position that only actual and not constructive seisin
is dispensed with.   In Dutton's Digest, p. 52, it is said :—
" In this state the husband may be a tenant by the curtesy
of land to which the wife had title, but of which she was
not actually seised during coverture.  *Kline* v. *Beebe*, 6
Conn., 499.   The same principle was previously adopted in
*Bush* v. *Bradley*, 4 Day, 298, although a *seisin in law* of the
wife during coverture is requisite."   It seems to us that this
last sentence clearly shows that Judge DUTTON construed
these decisions precisely as we do.   A mind so acute and
well stored with legal definitions as was his, must have un-
derstood that seisin in law in such connection is always used
in contra-distinction to a seisin in fact or in deed, and im-
ports a right to the possession.  In 1 Simmons & Stewart,
260, it is said that " seisin in deed is actual possession of the

freehold and seisin in law is a legal right to such possession." Blackstone, in the citation previously made, makes the same distinction and gives the same definition to the term "seisin in law," and adds that "therefore a man shall not be tenant by the curtesy of a remainder or reversion." In 2 Bouvier's Law Dictionary, p. 509, it is said that "seisin in law is a right of immediate possession," and this we think is the precise idea that Judge DUTTON intended by the same expression.

Our conclusion is that there is nothing in the decisions referred to, properly construed, to compel us to occupy the isolated position of holding that there can be curtesy in a remainder expectant upon a prior undetermined freehold.

It may be suggested that, if we discard actual seisin and still require seisin in law, we shall still be opposed to the great weight of judicial authority. This may be so; nevertheless, in holding a constructive seisin or seisin in law sufficient we are not without strong support. *Lessee of Merritt* v. *Horne*, 5 Ohio St., 307; *Watkins* v. *Thornton*, 11 id., 367; *Wass* v. *Bucknam*, 38 Maine, 356; *Day* v. *Cochran*, 24 Miss., 261; *Stephens* v. *Horne*, 25 Mo., 349; *Stoolfoos* v. *Jenkins*, 8 Serg. & Rawle, 167.

If curtesy was to be favored it would seem natural and reasonable perhaps, having abolished the common law requirement of actual seisin, to do away with constructive seisin also as a requisite to support the estate; but jurists agree that it is not to be favored. Chancellor KENT says the extent of the law of curtesy may be justly complained of. The obvious reason is that it gives to the husband what would otherwise belong to the heir of the wife. It has no moral foundation to rest upon, and hence the spirit and tendency of the times is toward its abolition rather than its extension. The legislature of this state twelve years ago abolished it as to all subsequent marriages, and several other states have done the same thing.

We advise the Superior Court to render judgment for the plaintiffs.

In this opinion ANDREWS, C. J., and BEARDSLEY, J., concurred.

PARDEE, J., (dissenting.) The question is, can there be a tenancy by the curtesy in a reversion expectant upon a prior estate for life, that estate having extended beyond the life of the wife owning the reversion?

The answer in the negative, given by a majority of the court, is undoubtedly the law in most, if not in all jurisdictions other than our own.

In *Bush* v. *Bradley*, 4 Day, 298, Josiah Woodhouse died, seised of the premises in question, in 1766. His son Robert inherited and occupied, and died seised in 1775. His only child, Mary, born in 1774, inherited; she intermarried with James Goldear in 1794, before she arrived at the age of twenty-one years. She continued a *feme covert* until her death in November, 1807, leaving her husband James Goldear living, having had children by him. These died before their mother. If they had survived her they could have inherited the premises. James Goldear had never been in actual possession of the premises. His wife had not been in possession since her intermarriage with him, for this reason, that the defendant, before 1788, more than twenty years prior to the commencement of the action, having purchased the premises for a valuable consideration, went into possession of the same, and from that time to the time of trial had held possession adversely to all others. The plaintiffs were the heirs at law of a sister of Josiah Woodhouse, the original owner. The defendant objected to a recovery on the ground that Goldear, being now living, was tenant by the curtesy of the premises, although neither he nor his wife had ever been in actual possession during coverture; and the court directed the jury to find a verdict for the defendant on that ground solely. The plaintiffs moved for a new trial. The court said substantially as follows:—

" As to the point respecting the curtesy, there is no question but what there must have been by the English law an actual seisin of the wife of the premises during the coverture, to entitle the husband to the curtesy. It is said that unnecessary departures from the common law of England are not to be favored ; that by such means everything is rendered un-

certain. I am fully of opinion that few maxims of our law are more important than that of *stare decisis;* but it must be acknowledged by all that our system of law respecting real property is, in many instances, very different from the English system. We have in some instances, when we have adopted the principles of the English law, extended them to cases which, by the adjudications of the English courts, have not been supposed to fall within the governing principle ; in others we have adopted entirely different principles; and in all such cases where this has been done, which are *pari ratione* with those already settled, if we reject our own and adopt theirs, we shall mar the symmetry of our law; and the preservation of symmetry in our system I also view as a most important consideration. In England it is not sufficient that a man is proprietor of real property, and has a perfect right to it when he dies, to cause it to descend to his heirs at law. No, he must be actually seised thereof. The maxim is *seisina facit stipitem;* and the person that is heir to that property will be heir to him that was last seised. If *A* should die, who owns Whiteacre, which descended to him from his father, but has not been actually seised, leaving a brother of the half-blood, *B*, and a sister, *C*, of the whole blood, this estate cannot descend to *C*, his sister and heir; for *B*, being of the half-blood, cannot by their law inherit to his brother; but yet the same will descend to *B*, who is heir to his father, who was the last seised. Had *A* been seised, the estate would have descended to *C*. The maxim of *seisina facit stipitem* is an unyielding maxim of their law, and what governs the descent of property. But this is not our law. It is settled that it shall descend to the heirs of him who owns the property, whether he was seised or not. Seisin directs the descent with them ; ownership with us.

"By the English law a devise will not operate upon real property of which the devisor is disseised. Seisin is an indispensable requisite to give effect to the devise. A devise, by our law, is good although a man is disseised. Seisin is necessary in their law and nothing but ownership in our law. We have always considered ownership of real property

sufficient to maintain an action of trespass against every in-truder; but by the English law actual possession by entry is necessary. We have always considered ownership as giving a right to possession of real property, as much so as ownership of personal property. Ownership in the one case draws after it the possession as much as in the other case; and whenever a right of possession is lost, all title and ownership are lost. So the statute of limitations respecting lands has always been construed. The statute, in the words of it, does not take from the original proprietor his title; it only tolls his right of entry; and yet this statute has been always considered as barring all claims of title, whilst the same words in the English statute have been considered, not as having any effect on the title, but only on the right of entry, and the lands may be recovered by a form of pro-ceeding proper for such a case. The English law distin-guishes betwixt a right of possession and a right of property; but our law does not. Wherever there is a right to real property, there is of course a right of possession, and the statute which takes away the right of possession, takes away the right of property; and this is the reason that this statute has received a construction altogether different from the construction given to the English statute; and this is perfectly analogous to every other case of real property in this state. Wherever you find a right of property you find a right of possession, and all the consequences of ownership at-tending it that you find in England where there is an actual seisin; and, on the other hand, where there is no right of pos-session there is no ownership. So in this case, Mary Goldear had title to the land, and though not actually seised, her hus-band acquired the same rights on her death as if she had been seised. Since seisin is not necessary in case of descent to the heirs, neither is necessary to pass lands by a devise, why should it be thought necessary to the husband's title by the curtesy?

"The decision of the court in this case is no departure from fixed rules and precedents. The departure from the English rule respecting the efficacy of seisin has long since

been departed from ; and to adhere to it in this case would mar the symmetry of our law."

In *Kline* v. *Beebe*, 6 Conn., 494, it is said in the marginal note that "in this state the husband may be tenant by the curtesy of land to which the wife had title, but of which she was not actually seised, during the coverture ;" citing *Bush* v. *Bradley*, 4 Day, 298.

In 4 Kent's Commentaries, (5th ed.), 30, it is said as follows : " The rule has been carried still further in this country ; and in one state, where the title by curtesy is in other respects as in England, it is decided that it was sufficient for the claim of curtesy that the wife had title to the land, though she was not actually seised nor deemed to be so. The law of curtesy in Connecticut is made to symmetrize with other parts of their system, and in that state ownership without seisin is sufficient to govern the descent or devise of real estate ;" citing *Bush* v. *Bradley*, 4 Day, 298, and *Kline* v. *Beebe*, 6 Conn., 494.

A vested remainder expectant upon a life estate is a fixed present right of property, alienable, devisable, descendible ; indeed it has all of the incidents of any other kind of present interest in real property. Ownership of, that is, the present right of property in, the reversion expectant upon a life estate, stands upon a plane with ownership of the fee. And upon the cited precedents in this court, ownership is perfect in utter disregard of the question as to possession. Ownership has displaced and stands for the actual seisin, the investiture by turf and twig of the common law. It matters not that the rightful owner in fee is kept from possession by a tort-feasor, or by rightful possession by the life-tenant. In each case alike there is a valuable vested present right of property, susceptible of ownership in the highest sense. To such ownership, in both cases, tenancy by the curtesy is legally incident equally.

In this opinion CARPENTER, J., concurred.